# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1797

_____

United States of America,          *
                                         *

      Plaintiff/Appellee,       *

                                         * Appeal from the United States
     v.                              * District Court for the
                                       * Northern District of Iowa.

Gregory Allen Peck,         *

                                       *

      Defendant/Appellant.    *

                                       *

                                       *

_____

Submitted: Oct. 22, 1998
Filed: December 7, 1998

_____

Before BOWMAN, Chief Judge, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge

     Gregory Allen Peck pled guilty to one count of possession with intent to distribute 10 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), conditioned on his right to appeal several pretrial rulings.

The district court[1] imposed a sentence of 210 months after concluding that Peck was a career offender under U.S.S.G. § 4B1.1 and then departing downward. Peck's appeal focuses on the district court's factual finding that the sentence for one of his prior felonies had been imposed within ten years of his arrest, its denial of a motion to suppress statements, and several other rulings. We affirm.

I.

In the early morning hours of December 23, 1996, a deputy sheriff observed a Ford Bronco parked near the entrance to a county park with its lights on and its engine running. When the deputy approached the vehicle, he saw Peck asleep in the driver seat, only partially clothed. He also saw what appeared to be a large marijuana cigarette in the ashtray. After another officer arrived, they both noticed the odor of marijuana and woke Peck up and took him to their patrol car. He asked them to retrieve his pants and while doing so the officers discovered $2200 in cash in a pocket. They read him his rights, placed him under arrest, and then conducted a partial search of the vehicle and found a box containing marijuana and methamphetamine and other drug-related material.

Peck left town and traveled to Oregon before the federal indictment was filed, and a warrant was issued for his arrest. When Peck learned about the warrant, he contacted the authorities in Iowa, expressed his desire to cooperate, and traveled back to the state, voluntarily surrendering in May 1997.

On his return to Iowa he was taken into custody and again read his Miranda rights. He signed a one page "statement of cooperation" which stated that he was aware of his right to speak with an attorney and that he could stop cooperating at any

[1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

time. He was then interviewed for several hours and made some incriminating statements, implicating himself and others in criminal activities. He reported that he had purchased over 15 ounces of methamphetamine from a source in California in December 1996, that he had previously purchased 8 ounces of methamphetamine, and that he had been involved in receiving approximately 1,000 pounds of marijuana. In his later plea agreement, he stipulated that he had received two packages of methamphetamine in 1996, one containing approximately 8 ounces and the other approximately 15 ounces 2 grams.

At his sentencing hearing, Peck testified that several of his statements about methamphetamine in the May interview and in his plea stipulation had been false and made only to curry favor with the authorities. At the hearing, he claimed that the first time he had ever received methamphetamine was when he purchased 15 ounces 2 grams from a source in Iowa a few days before his arrest in December. Peck also presented evidence to show his alleged source in California was unavailable during parts of the relevant time period. This evidence contradicted his earlier statements about the number, timing, and source of his methamphetamine purchases.

The district court reviewed Peck's criminal history and concluded that he qualified as a career offender under U.S.S.G. § 4B1.1. For Peck to meet the career offender requirements he would have had to have two prior felonies involving violence or controlled substances for which he had been sentenced within ten years of the commencement of the current offense. See U.S.S.G. § 4A1.2(e)(2). Peck had two prior felony drug convictions, one for growing marijuana and one for possessing and transporting or selling marijuana. He was sentenced for the first in September 1986 and received a suspended sentence for the other in July 1995. The district court counted both convictions in its career offender calculation after finding that Peck's conduct relevant to the instant offense had begun at least by early 1996. The court also departed downward after determining that Peck's criminal history score of VI overstated his actual record since the Wisconsin conviction could have been within just

a few months of being time barred and neither of his prior convictions had warranted serious sentences. The court found the offense level to be 34 and reduced the criminal history category to IV which resulted in a sentencing range of 210 to 262 months.

## II.

Peck asserts that it was error for the court not to suppress the statements he made in May 1997 because they were involuntary under the totality of the circumstances and made without waiver of his right to counsel. He states that he did not make an intelligent and knowledgeable waiver of his right to counsel because he was unaware of the potential adverse impact his statements could have on sentencing. Peck also complains that he was tired after a long bus ride and that the officers suggested he might receive more lenient treatment if he cooperated. The magistrate judge specifically found that Peck had known he was going to be met by law enforcement officers upon arrival in Iowa; that he had received Miranda warnings, signed a cooperation agreement showing he was aware of his rights, arranged the meeting with officers and wanted to talk; and that he had continued to cooperate after speaking with an attorney. The district court adopted the findings and conclusions of the magistrate judge.

The district court's ultimate interpretation and application of legal standards are reviewed de novo. See, e.g., United States v. Makes Room, 49 F.3d 410, 414 (8th Cir. 1997). Its findings of fact are only reviewed for clear error, however, and due weight must be given to permissible inferences drawn from those facts. See Ornelas v. United States, 517 U.S. 690, 699 (1996). In light of the record and the trial court findings, Peck has not shown his will was "overborne." United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990); see also Jenner v. Smith, 982 F.2d 329, 333 (8th Cir. 1993) (statement not involuntary unless "the police extorted it from the accused by means of coercive activity"). Lack of awareness of the potential adverse impact of statements is not sufficient in itself to invalidate a waiver of the right to counsel. See Patterson v.

– 4–

Illinois, 487 U.S. 285, 292 (1988) (valid Miranda warnings sufficient to demonstrate valid waiver of Sixth Amendment right to counsel); United States v. Johnson, 47 F.3d 272, 277 (8th Cir. 1995) (rejecting the argument that defendants must be warned of the potential sentencing consequences of waiving their right to remain silent).

Peck further challenges the district court's factual finding that the relevant conduct in the instant offense began before September 1996 -- a finding critical to its determination that he was a career offender. The contradictory evidence presented on the issue of when the relevant conduct began made it necessary for the court to base its decision on credibility. Special Agent Dasso testified about his May 1997 interview with Peck which suggested that the relevant conduct began long before December 1996. Peck argues that Dasso misrepresented statements from the May interview, that several statements he had made were untrue, and that his relevant conduct did not begin until December 1996, making the 1986 felony irrelevant for career offender status. Credibility determinations are squarely within the discretion of the district court, and it was not clear error to accept the officer's testimony regarding Peck's admissions. See United States v. Coleman, 148 F.3d 897, 901 (8th Cir. 1998) ("Determinations of witness credibility are virtually unreviewable."); United States v. Dolan, 120 F.3d 856, 871 (8th Cir. 1997) (noting that the district court need not accept a defendant's "self serving assertions at sentencing").

Peck's counsel raises several other points that are without merit.[2] Peck argues that the federal government did not have jurisdiction to prosecute him because the crime had been committed on state land. This argument formed the basis of his failed Motion to Dismiss Indictment, Motion for Declaratory Judgment, and Motion to

---

[2]Peck also submitted a supplemental pro se brief. It is not our practice to consider pro se briefs filed by parties represented by counsel, see United States v. Dierling, 131 F.3d 722, 734 n.7 (8th Cir. 1997), and Peck raises no arguments that would lead to a different result. His motion for use of pseudonyms is denied.

Dismiss on Constitutional/Jurisdictional Grounds. It was not error to deny these motions; 21 U.S.C. § 841(a)(1) has been found to be a valid exercise of Congress' powers under the Commerce Clause. See United States v. Brown, 72 F.3d 96, 97 (8th Cir. 1995). The court also correctly declined to take judicial notice of other irrelevant materials. The jury has no role in deciding legal issues, and Peck waived any claim to an independent evidentiary hearing on his motion to withdraw the factual stipulation in his guilty plea or to withdraw his plea. He explicitly stated in the district court that the motion to withdraw his plea had itself been withdrawn and that issues relating to the stipulation of facts were incorporated into his arguments about the period of relevant conduct. United States v. Olano, 507 U.S. 725, 732-33 (1993) (waiver involves intentionally relinquishing or abandoning a known right).

### III.

After a thorough review of the record, we find that the district court did not err in its pretrial rulings or sentencing decisions. Peck has not shown that it was error for the court to consider statements made in his May interview with law enforcement officers or that the court's factual findings at the sentencing hearing were clearly erroneous. We affirm the judgment.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.