# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3181

_____

Edwin Allen; Joan Allen, (Spouse),    *
                                      *

        Plaintiffs - Appellants,    *

                                        *

      v.                          *  Appeal from the United States
                                        *  District Court for the District of

Brown Clinic, P.L.L.P., a South Dakota  *  South Dakota.
Limited Liability Partnership, doing    *
business as Brown Clinic; Edwin       *
Gerrish, M.D., an individual,         *

                                        *

        Defendants - Appellees.    *

_____

Submitted: May 16, 2008
Filed: July 2, 2008

_____

Before LOKEN, Chief Judge, BEAM, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Edwin and Joan Allen appeal an adverse jury verdict in a medical malpractice claim against Brown Clinic, P.L.L.P. and Dr. Edwin Gerrish. We affirm.

## I

On July 7, 2003, Edwin underwent surgery for a hiatal hernia.[1]  The surgery was performed at Brown Clinic by Dr. Edwin Gerrish.  The evidence discusses two methods of hiatal hernia repair.  With the first, an open repair, an incision is made in the stomach area while the patient is under general anesthesia.  The surgeon tightens the hiatus, and may manually wrap the upper part of the stomach around the esophagus.  The second method employs a laparoscope and is referred to as "keyhole" or "telescopic" surgery.  A laparoscope is a thin, hollow tube with a mini-camera on the end, through which surgical tools are passed.  Laparoscopic procedures use smaller incisions than open surgery, resulting in less pain and scarring and shorter hospital stays.  Edwin underwent an open repair.

Edwin remained hospitalized through July 14.  Post-operatively, he experienced complications including fever and a buildup of fluid and air in the chest cavity around the lungs.  He was discharged with instructions to return for a followup appointment July 18.  An x-ray taken July 18 revealed the buildup of fluid and air was causing displacement of the heart and other structures with some impact on the right lung.  Dr. Gerrish determined it would be necessary to drain the fluid and scheduled a procedure for July 21.  On July 20, Edwin presented at the emergency room where the previously scheduled procedure was done on an emergency basis.

Dr. Gerrish suspected the buildup of fluid and air was caused by a perforation in the esophagus and on July 25 performed exploratory surgery in an attempt to locate the tear.  Dr. Gerrish failed to locate any perforation and discharged Edwin three days

---

[1]The hiatus is an opening in the diaphragm – the muscular wall separating the chest cavity from the abdomen.  Normally, the esophagus goes through the hiatus and attaches to the stomach.  In a hiatal hernia the stomach bulges up into the chest through the hiatus.

later with a diagnosis of unidentified leak in the distal esophagus. Edwin was later treated at the Mayo Clinic where doctors located and repaired an esophageal perforation. As a result of the perforation and repair, Edwin has chronic swallowing problems.

The parties disagreed as to the cause of the esophageal perforation. Edwin argued the tear was the result of Dr. Gerrish's negligence in performing the open hiatal hernia repair. Edwin further argued Dr. Gerrish's initial negligence was compounded by a negligent failure to identify and treat the perforation. Defendants argued there was no credible evidence to show the perforation occurred during the surgical procedure. The defendants' expert testified it would have been virtually impossible to perforate the esophagus during an open repair and several other explanations were far more likely.

The jury concluded Dr. Gerrish was negligent but his negligence was not the proximate cause of Edwin's perforated esophagus. On appeal, Edwin argues the district court erred when it denied his motion to exclude for cause 1) all jurors who had ever received medical treatment at Brown Clinic or with Dr. Gerrish, 2) all jurors who had family members who had been treated at the clinic or by Dr. Gerrish, and 3) two jurors who had relatives with connections to the defendants. He also argues the district court erred in denying his motion to exclude the defendants' medical expert.

II

A

Edwin moved pretrial to exclude ten prospective jurors for cause who had doctor/patient relationships with Brown Clinic or Dr. Gerrish or were related to persons with such relationships. During voir dire, he also moved to exclude for cause

a prospective juror whose second cousin was a doctor at Brown Clinic and another whose cousin was married to Dr. Gerrish's brother-in-law.

The district court[2] denied the pretrial motion, indicating the issue of bias would be explored by the court and parties during jury selection. In the course of voir dire, the court excluded four of the ten jurors with doctor/patient relationships finding their responses suggested possible bias. Of the remaining eight contested jurors, three: Tammy Spencer, Lori Finnesand, and Allen Nash, were seated on the jury.[3] Spencer stated she had treated at Brown Clinic ten years earlier and did not know Dr. Gerrish, Nash testified his second cousin was a physician at Brown Clinic, and Finnesand's cousin was married to Dr. Gerrish's brother-in-law. Each of the jurors agreed during voir dire to be fair and impartial. Nonetheless, Edwin argues the jurors' professional or familial relationships with the defendants presumptively disqualified them from jury duty.

A trial court's decision to disqualify prospective jurors is reviewed for abuse of discretion. See, e.g., United States v. Tibesar, 894 F.2d 317, 319 (8th Cir. 1990). To challenge a juror for cause, a party must show actual partiality growing out of the nature and circumstances of the case. United States v. Tucker, 137 F.3d 1016, 1029 (8th Cir. 1998). "A district court is required to strike for cause any juror who is shown to lack impartiality or the appearance of impartiality, and, '[a]bsent abuse of discretion, we will not interfere with the District Court's determination of juror qualifications.'" United States v. Elliott, 89 F.3d 1360, 1365 (8th Cir. 1996) (quoting Tibesar, 894 F.2d at 319). "The district court is given broad discretion in determining whether to strike jurors for cause because it is in the best position to assess the

---

[2]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota, sitting by designation.

[3]A fourth juror was seated as an alternate but did not deliberate.

-4-

demeanor and credibility of the prospective jurors." Id. (citing United States v. Graves, 5 F.3d 1546, 1554 (5th Cir. 1993)).

> Appellants must clear a high hurdle to obtain reversal of a district court's decision regarding the dismissal of a juror for cause. The courts presume that a prospective juror is impartial, and a party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside his or her impressions or opinions and render a verdict based on the evidence presented in court. Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position.

Moran v. Clarke, 443 F.3d 646, 650 (8th Cir. 2006) (citations omitted).

"[T]he idea of presumed bias is reserved for extreme cases, such as when a juror is a close relative of a party or victim in the case." United States v. Tucker, 243 F.3d 499, 509 (8th Cir. 2001) (discussing presumed bias in the context of a criminal prosecution). "[E]xtreme situations that would warrant a finding of implied bias . . . 'include a revelation that a juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.'" Id. (quoting Smith v. Phillips, 455 U.S. 209, 222 (1982) (J. O'Connor concurring)).

The factual basis for Edwin's claim of implied or presumptive juror bias falls well short of the showing necessary to support such a claim. Each juror pledged to be fair and impartial, and neither the long-past professional relationship with Brown Clinic or the relatively distant familial connections leads us to conclude the jurors were so closely associated with the defendants they could not be impartial. Accordingly, there was no abuse of discretion in the district court's decision to deny the challenges for cause.

B

Edwin next argues the district court erred in denying his motion to exclude defendants' medical expert, Dr. Paul Severson. He contends the expert was not qualified under Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999), to give opinions about open hernia repairs because he was only an expert on laparoscopic repairs. He further contends it was error to allow Dr. Severson to testify about possible causes of the perforation without stating, to a reasonable degree of medical certainty, which proximately caused the injury.

We review the district court's decision regarding the admissibility of expert witness testimony for an abuse of discretion. Craftsmen Limousine, Inc. v. Ford Motor Co., 363 F.3d 761, 776 (8th Cir. 2004). Federal Rule of Evidence 702 governs the admission of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, or experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

We give district courts great latitude in determining whether expert testimony meets the reliability requisites of Rule 702. Craftsmen Limousine, Inc., 363 F.3d at 776. Under Rule 702, the trial judge has the gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Kumho Tire Co., 526 U.S. at 141 (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993)). In making the determination, the district court may evaluate one or all of the following factors: 1) whether the theory or technique can be or has been tested; 2) whether the theory or technique has been subjected to peer

review and publication; 3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and 4) whether the theory or technique is generally accepted in the scientific community. Daubert, 509 U.S. at 593-94; see also Craftsmen Limousine, Inc., 363 F.3d at 776-77 (applying Daubert to expert witness testimony in an antitrust case). Regardless of what factors are evaluated, the main inquiry is whether the proffered expert's testimony is sufficiently reliable. See Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005) ("There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant.").

Dr. Severson is a board certified general surgeon with extensive academic – including teaching – and professional experience. He testified he is experienced in open and laparoscopic hiatal hernia repair procedures and has performed both. The witness conceded he has performed more laparoscopic surgeries and, since the less invasive procedure became available, he no longer performs open repairs. The district court concluded Dr. Severson was qualified to testify about both laparoscopic and open hiatal hernia repair procedures, and any differences in his relative experience could be explored on cross-examination.

Further, Edwin's claim that Dr. Severson denied being an expert in open hiatal hernia repair is unsupported by the record. Dr. Severson was asked if he considered himself an expert in laparoscopic surgery and answered affirmatively. He did not testify he was an expert in open hiatal hernia repairs because he was never asked the question. Edwin's claim is a mischaracterization of the record and rests on the flawed assumption that an affirmative response to one question implies a negative response to a question never asked. Accordingly, we conclude the district court did not abuse its discretion when it allowed Dr. Severson's testimony.

Edwin also argues the district court erred in denying his motion to exclude the testimony because Dr. Severson did not opine as to proximate cause. Dr. Severson

testified it would be virtually impossible to perforate the esophagus during an open hiatal hernia repair and there were at least four more likely scenarios for how the perforation occurred. He did not, however, offer an opinion as to which possibility was, to a reasonable degree of medical certainty, more likely. According to Edwin, the district court should have excluded the testimony because Dr. Severson failed to offer an opinion as to the actual cause of the perforation. In other words, Edwin argues the expert should have been required to opine as to an alternative "proximate" cause, not alternate "possible" causes.

"The general rule in medical malpractice cases [is] that negligence must be established by the testimony of medical experts." Schrader v. Tjarks, 522 N.W.2d 205, 210 (S.D. 1994) (citation and quotation omitted). "In a medical malpractice case, plaintiff has the burden to show whether the doctor deviated from the required standard of care." Id. (internal quotation and citation omitted). Edwin's argument seeks to preclude the testimony of defendants' expert by shifting the burden of proof. If the argument was accepted, it would not be enough for a defendant's expert to undermine the plaintiff's proffered testimony regarding proximate cause. Rather, a defendant's expert witness would be precluded from testifying unless he could conclusively state what proximately caused the injury.

> Defendant need not prove another cause, he only has to convince the trier of fact that the alleged negligence was not the legal cause of the injury. In proving such a case, a defendant may produce other "possible" causes of the plaintiff's injury. These other possible causes need not be proved with certainty or more probably than not. To fashion such a rule would unduly tie a defendant's hands in rebutting a plaintiff's case, where as here, plaintiff's expert testifies that no other cause could have caused plaintiff's injury. The burden would then shift and defendant would then bear the burden of positively proving that another specific cause, not the

negligence established by plaintiff's expert, caused the injury. Certainly, this is much more than what should be required of a defendant in rebutting a plaintiff's evidence.

Wilder v. Eberhart, 977 F.2d 673, 676-77 (1st Cir. 1992) (internal citations omitted).

We conclude the rule propounded by Edwin would impermissibly shift the burden of proof and require a defendant to "disprove" a plaintiff's theory by a preponderance of the evidence. Accordingly, we affirm the district court's denial of the motion to exclude.

III

The judgment of the district court is affirmed.

_____