# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1924

_____

Marilyn Cravens; Walter Cravens,  *
            *
    Plaintiffs,     *
            *
The Kneibert Clinic, LLC,    *
            *
    Plaintiff - Appellant,  *
            * Appeal from the United States
            * District Court for the
    v.       * Eastern District of Missouri.
            *
Richard Smith, M.D.; Weatherby  *
Locums Tenens, Inc.,     *
            *
    Defendants - Appellees, *
            *
American Continental Ins. Co.,  *
            *
    Defendant.    *

_____

Submitted: January 13, 2010
Filed:  July 6, 2010

_____

Before SMITH and COLLOTON, Circuit Judges, and KORNMANN,[1] District Judge.

_____

SMITH, Circuit Judge.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

The Kneibert Clinic, LLC ("Kneibert") filed suit against Dr. Richard Smith and Weatherby Locums Tenens, Inc. ("Weatherby"), alleging a claim of indemnification from Dr. Smith and Weatherby for a judgment incurred by Kneibert in a separate lawsuit brought by a patient allegedly harmed by the negligence of Kneibert and Dr. Smith. A jury rendered a verdict in favor of Dr. Smith and Weatherby. Kneibert appeals, asserting five reversible errors on the part of the district court.[2] We affirm.

## I. *Background*

Kneibert is a physicians group that provides multiple medical services, including radiology. In 2000, Kneibert contracted with Weatherby to obtain an interim radiologist for its group. The contract obligated Weatherby to (1) present qualified physician candidates for Kneibert's approval; (2) pay all fees to the physician directly; (3) provide occurrence-based malpractice insurance with limits of one million to three million dollars for each physician placed with Kneibert; (4) allow Kneibert to retain any and all revenue that the physician generated; and (5) provide administrative assistance to obtain hospital privileges for the physician, if required. Pursuant to the contract, Dr. Smith was chosen as the new radiologist.

In July 2002, Marilyn and Walter Cravens filed a medical malpractice action in Butler County, Missouri, against Kneibert and Dr. Robert Young, a partner in the Kneibert Clinic ("Butler County action"). The Cravens alleged that Kneibert, through its agent, Dr. Young, was negligent in failing to diagnose Mrs. Cravens's breast cancer, ascertain the significance of the lump found in her breast, and remove the lump. The petition did not mention Dr. Smith—the radiologist—or Weatherby.

The Cravens filed an amended petition in August 2003; in that petition, they referenced Dr. Smith but did not name him or Weatherby as defendants. The amended

---

[2]The Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

petition alleged that Dr. Smith, as Kneibert's agent, performed radiological services in August 2000 by reading mammogram and ultrasound films.

To assist in prosecuting their claim, the Cravens retained Dr. Howard Ozer, an oncologist, as an expert witness. Dr. Ozer criticized Dr. Young's treatment, testifying that Dr. Young should have performed a biopsy despite receiving negative ultrasound and mammogram test results. He opined that a biopsy of a clinically suspicious palpable mass, like that detected by Dr. Young in Mrs. Cravens, should not have been delayed on the basis of a normal mammogram and ultrasound. Initially, Dr. Ozer was not asked to offer any opinions concerning the radiologist's standard of care. However, Dr. Ozer expressed his view that Dr. Smith's ultrasound report should not have been relied upon to forego a biopsy.

Kneibert tendered the defense of the claims related to Dr. Smith's medical service to Weatherby's insurance carrier, St. Paul Fire and Marine Insurance Company ("St. Paul").[3] St. Paul declined to provide a defense for Kneibert because Kneibert had exposure to liability based on the acts of Dr. Young and the radiology technician, who St. Paul did not insure. St. Paul did agree to defend any claims brought against Weatherby or Dr. Smith via a third-party petition.

During the course of the litigation, Kneibert lost its insurance coverage for the claim because its insurance carrier went into receivership. Following the loss of coverage, Kneibert's counsel suggested a proposed settlement to the Cravens' counsel under § 537.065 of the Missouri Revised Statutes. The December 16, 2003 letter addressed to the Cravens' counsel stated:

> You have amended your Petition in this matter to include a claim that the mammogram and MRI w[ere] misinterpreted.

---

[3]St. Paul is the successor-in-interest to American Continental Insurance Company.

At the time the mammographer, Dr. Richard Smith, was furnished by Weatherby Locums, Inc., under contract to the Kneibert Clinic.

Under these circumstances we would like to suggest to our client, Kneibert Clinic, L.L.C., that it enter into an agreement with you whereby you would: A) dismiss your claim for respondeat superior liability against the Clinic as relates to Dr. Young; and B) enter into an agreement under Section 537.065 to limit your recovery against Kneibert to the insurance provided to Dr. Smith and Weatherby Locums by St. Paul Fire and Marine.

The Weatherby contract is attached; you will note that they are required to provide malpractice insurance for Dr. Smith, which they did through St. Paul. We have requested that St. Paul provide a defense and indemnification; they have refused.

To my knowledge they have no policy defenses whatsoever and the apparent reason for refusal is the statement, "it would be unclear as to what portion of the verdict was apportioned to the alleged acts of Dr. Smith[."]

I propose to, by the above method, make that clear and give you free access to summary judgment against Weatherby and Richard Smith such sum as you would care to "prove up to the Judge[."] You might look at my disaster in the Southern District, a copy of which opinion is attached[,] to see how easy it is when somebody is not paying attention as is the case with St. Paul's subsidiary (American Continental Insurance Company).

Based on the proposed settlement, Kneibert agreed not to defend the claims against it due to the alleged negligence of Dr. Smith and Weatherby. Kneibert further agreed not to contest any evidence that the Cravens chose to submit to the court on the issue of damages.

On January 27, 2005, Kneibert's counsel wrote a letter to confirm Kneibert's oral agreement with the Cravens' counsel, stating:

This will confirm our oral agreement.

You will:

(a) dismiss the case as against Robert Young, M.D.;

(b) we will enter into an agreement under § 537.065 in the form as delivered by me to you;

(c) we will at the first available opportunity put on evidence in front of Judge Richardson which will through the testimony of [Dr.] Yuri Parisky[4] establish that Richard Smith was solely at fault in that he (i) misinterpreted the mammogram; (ii) misinterpreted the ultrasound[;] (iii) improperly either conducted the ultrasound or failed to cause the ultrasound to be repeated[;] (iv) that such failure was *the* direct and proximate cause of Dr. Young's failure to follow up in that Dr. Young called Dr. Smith, assuming that to be true (Young's deposition)[.] Dr. Young having been orally assured that the finding was indeed BiRad 2 and therefore benign was justified in not further following up with a biopsy.

We will further establish through [Dr.] Parisky and [Dr.] Ozer that given the cystic and heterogeneously dense nature of Mrs. Cravens['s] breast, it would not have been negligent for either Dr. Young or Mrs. Cravens not to detect from their respective perspectives any change in condition, i.e., she would have thought that her condition was the same and not called him and he would have thought [that] her condition was the same not having been called.

---

[4]After the proposed settlement, the Cravens obtained a second deposition from Dr. Parisky, an expert witness. He had originally criticized Dr. Young and Kneibert's radiology technician during his first deposition. But his second deposition was limited to Dr. Smith's actions.

-5-

That no matter what occurred when she had the hysterectomy, diagnosis at that time would not have matter[ed], that the only diagnosis that mattered was the missed opportunity of August 10, 2000. That the August 10, 2000 missed opportunity is the responsibility of Richard Smith.

The next thing that needs to be established is a reasonable agency or apparent agency. We would offer the deposition of Bob Christian and the Locums' agreement and Mrs. Cravens will need to testify that she allowed the mammography to be done at Kneibert Clinic, relying on the fact that a Kneibert Clinic employee or partner would be the one to interpret it (we need to have both *Scott* elements and some element of apparent authority to be really safe).

We then offer those portions of the deposition of [Dr.] Howard Ozer that establish the lost chance (John [(the Cravens' attorney)] it will be important [to] leave out of evidence the deposition portions that relate to his criticisms of Dr. Young, we don't want to get caught up in an allocation battle with St. Paul, I mean we don't want them coming back and saying that i[t] was all Young's fault, so we need to leave out Ozer's criticism of Dr. Young).

Next we will give you a supplemental agreement supported by resolution of Kneibert Clinic, LLC.

This agreement will provide: that Kneibert Clinic LLC will pay, at your option, in the event that there is no recovery possible against Richard Smith[ ][,] St. Paul[ ][,] or Weatherby Locum[s], $50,000.00 or the lawsuit as it exists on this date (prior to the dismissal) can be reinstated at the status quo and which will also provide that the Kneibert Clinic will pay me to do the legal work in the direct action against Smith and St. Paul on indemnity. We do have to decide whether we are going to sue Smith and Weatherby or St. Paul or both—we need to discuss this. St. Paul would probably get Ted Osburn[,] and Jeff probably can figure out what the defenses are, whereas if we don't do that and we stick with suing Smith and Weatherby we will get Spain, who has already advised St. Paul and at least in part put them in the position they find themselves.

-6-

I trust this fully sets forth our agreement and understanding. Please concur.

On February 8, 2005, the Cravens and Kneibert entered into a settlement agreement. In the agreement, the Cravens agreed to "dismiss all portions of their claim against [Kneibert] except those directly related to the negligence of Dr. Richard Smith." In return, Kneibert agreed to "waive a jury and the [Cravens] may present such evidence as is necessary to make [their] case against [Kneibert] through the negligent acts of Dr. Richard Smith . . . ." The parties determined that the Cravens would collect any judgment only against Dr. Smith, Weatherby, or St. Paul and would release Kneibert of all liability.

Kneibert represented in the agreement that it had made a demand upon Weatherby to undertake Kneibert's defense for Dr. Smith's negligent acts and that it had "directly tendered the defense of the action against it as it pertains to the negligent actions of Richard Smith directly to the St. Paul and St. Paul's attorney . . . and that St. Paul has declined and refused to undertake the defense . . . ." Kneibert acknowledged the likelihood that "if this case were tried to the jury the Cravens would prevail and a verdict would be entered against [Kneibert] as a result of the negligent acts of Richard Smith."

Also on February 8, 2005, the Cravens and Kneibert supplemented their settlement and agreed that following the trial court's entry of judgment against Kneibert, the Cravens and Kneibert "will cooperate and file a suit against Weatherby Locums Tenens, Inc., Dr. Richard Smith and the St. Paul Insurance Company (or subsidiary) as provides professional liability coverage through Weatherby Locums Tenens . . . ."

On February 9, 2005, the Cravens and Kneibert appeared before the Butler County Circuit Court for a bench trial. At that time, the Cravens dismissed Dr. Young from the case and proceeded to trial on their claims against Kneibert based on Dr. Smith's conduct. As they agreed, Kneibert offered no expert testimony to defend Dr. Smith or Weatherby. The trial court entered judgment in favor of the Cravens and against Kneibert in the aggregate amount of $804,000 for the negligence of Dr. Smith—Kneibert's agent at the time of the negligence ("Butler County judgment"). To date, Kneibert has paid no money to the Cravens.

On April 29, 2005, the Cravens and Kneibert filed the instant action for indemnification in the Circuit Court of Cape Girardeau County, Missouri, against Weatherby, Dr. Smith, and St. Paul. Weatherby removed the action to federal district court with St. Paul's and Dr. Smith's consent. Following removal, the district court dismissed all claims against St. Paul for failure to state a claim. The court also eliminated the Cravens as parties because their sole claim for relief was against St. Paul. As a result, only Kneibert's indemnification claim remained before the court.

Dr. Smith and Weatherby moved for summary judgment, raising the affirmative defense that Kneibert's settlement agreement with the Cravens increased their risk or prejudiced their rights to such an extent that Kneibert's entitlement to indemnity for the Cravens' judgment had been discharged. The district court denied the motion, finding that genuine issues of material fact remained as to whether Kneibert's settlement conduct with the Cravens increased the risk to, or prejudiced the rights of, Dr. Smith and Weatherby.

Kneibert later moved for summary judgment, arguing that no genuine issues of material fact existed and that it was entitled to judgment as a matter of law on its claims that Dr. Smith and Weatherby owed a duty to indemnify it on the underlying judgment. The district court denied the motion, concluding that Kneibert "presented nothing to the Court . . . to dissuade [it] from the previous finding that genuine issues

of material fact exist as to the extent of the duty owed by the defendants to indemnify plaintiff on the Butler County Judgment." In its order, the district court rejected the argument that the Butler County judgment collaterally estopped Smith and Weatherby from relitigating the underlying claims relating to Dr. Smith's negligence, finding that Kneibert could not offensively use collateral estoppel to prevent relitigation of the negligence issue because neither Dr. Smith nor Weatherby were parties in the Butler County action and thus did not have a full and fair opportunity to litigate the issue of negligence in the prior action.

After a pretrial conference, the court bifurcated the trial. The initial issue to be tried was Dr. Smith's and Weatherby's affirmative defense—"whether Kneibert's conduct in securing the Settlement Agreement and in obtaining Judgment against itself materially increased the risk to, or prejudiced the rights of, defendants Smith and Weatherby as indemnitors such that defendants were relieved of any duty to indemnify Kneibert." According to the court, a verdict in favor of Dr. Smith and Weatherby would end the case. But if the jury found that Kneibert's conduct was not sufficiently prejudicial, "the trial would then proceed to the second phase: that is, to determine the underlying medical malpractice action against Dr. Smith and Weatherby." The court explained that a trial on the merits of the underlying action was necessary because "Missouri law prohibited plaintiff from offensively using the Butler County Judgment to collaterally estop the 'relitigation' . . . of the underlying negligence action."

At the conclusion of the first phase of the bifurcated trial, the jury returned a verdict in favor of Dr. Smith and Weatherby, specifically finding that Kneibert's conduct in entering into the settlement agreement with the Cravens materially increased the risk to, and prejudiced the rights of, Dr. Smith and Weatherby as indemnitors. Thereafter, the district court entered judgment on the jury's verdict in favor of Dr. Smith and Weatherby and dismissed Kneibert's complaint with prejudice.

Kneibert filed a motion for new trial, which the district court denied.

## II. *Discussion*

On appeal, Kneibert argues that the district court (1) erroneously denied its motion for summary judgment based on the court's improper conclusion that Kneibert owed a duty not to materially increase the risk to, or prejudice the rights of, Dr. Smith and Weatherby in settling the Butler County action; (2) improperly instructed the jury that Kneibert owed a duty not to materially increase the risk to, or prejudice the rights of, Dr. Smith and Weatherby in settling the Butler County action; (3) erroneously denied Kneibert's motion for summary judgment because Dr. Smith and Weatherby are bound by the Butler County judgment, as they were given notice of and an opportunity to control the underlying litigation regarding Dr. Smith's negligence; (4) erroneously declined to take judicial notice of its prior order denying Kneibert's motion for summary judgment that Dr. Smith and Weatherby were not bound by the Butler County judgment and in not permitting Kneibert to argue this fact to the jury; and (5) erred in striking two venirepersons for cause.

As a threshold matter, "[t]his court . . . 'will not review a district court's denial of a motion for summary judgment after a trial on the merits.'" *Hertz v. Woodbury County, Iowa*, 566 F.3d 775, 779 (8th Cir. 2009) (quoting *EEOC v. Sw. Bell Tel., L.P.*, 550 F.3d 704, 708 (8th Cir. 2008)); *see also Eaddy v. Yancey*, 317 F.3d 914, 916 (8th Cir. 2003) ("Even a cursory review of precedent in this Circuit reveals that we do not review a denial of a summary-judgment motion after a full trial on the merits."); *White Consol. Indus., Inc. v. McGill Mfg. Co.*, 165 F.3d 1185, 1189 (8th Cir. 1999) ("A denial of summary judgment is interlocutory in nature and is ordinarily not appealable after trial and judgment."). "Instead . . . the 'proper redress' for a denial of summary judgment following final judgment is 'through subsequent motions for judgment as a matter of law . . . and appellate review of those motions' if the district court denies them." *Hertz*, 566 F.3d at 779 (quoting *White Consol. Indus.*, 165 F.3d at 1189).

Accordingly, we decline to review Kneibert's first and third arguments on appeal that the district court erroneously denied its motion for summary judgment. Instead, we limit our review to issues two, four, and five listed above—issues that Kneibert raised in its motion for new trial.

"We review a district court's denial of a motion for a new trial for abuse of discretion." *Cook v. City of Bella Villa*, 582 F.3d 840, 855 (8th Cir. 2009).

A. *Jury Instruction*

First, Kneibert argues that the district court erred in instructing the jury that Kneibert owed a duty to Dr. Smith and Weatherby not to materially increase the risk to, or prejudice the rights of, Dr. Smith and Weatherby, the indemnitors, in settling the Butler County action. Additionally, Kneibert asserts that the district court also erred in refusing to give Rejected Jury Instruction No. 15, which read:

> Once a demand is made on the indemnitor to defend the litigation against the indemnitee and the demand is refused, the indemnitee may settle the claim in good faith and proceed against the indemnitor. The indemnitee must show that its settlement was reasonable and made in good faith.

This court reviews for an abuse of discretion a district court's jury instructions. *Cook*, 582 F.3d at 856. "We afford the district court broad discretion in choosing the form and language of the instructions and will reverse a jury verdict only if the erroneous instruction affected a party's substantial rights." *Id*. (internal quotations, alteration, and citations omitted). This court's review of the jury instructions "is limited to whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *Id*. (internal quotations, alterations, and citations omitted). "When sitting in diversity, a district court's jury instructions must fairly and adequately represent the law of the forum state." *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 744 (8th Cir. 2010) (internal quotations and citation omitted).

"As a general rule, indemnification is allowed in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer." *SSM Health Care St. Louis v. Radiologic Imaging Consultants, LLP*, 128 S.W.3d 534, 539 (Mo. Ct. App. 2003). When a person who is without fault "is exposed to liability and compelled to pay damages on account of the negligence of another, that person has a right of action against the active tortfeasor on the theory of an implied contract of indemnity." *Id.* at 540. But the *duty to defend* "is independent of" the *duty to indemnify*. *Burns & McDonnell Eng'g Co. v. Torson Constr. Co.*, 834 S.W.2d 755, 758 (Mo. Ct. App. 1992). "The duty to defend is determined by comparing the policy language with the allegations in the complaint." *Sawyer v. Bi-State Dev. Agency*, 237 S.W.3d 617, 621 (Mo. Ct. App. 2007) (internal quotations and citation omitted); *see also Crown Ctr. Redevelopment Corp. v. Occidental Fire & Cas. Co.*, 716 S.W.2d 348, 357 (Mo. Ct. App. 1986) ("The duty of an insurer to defend is contractual, and if there is no contract to defend there is no duty to defend."). By contrast, "[t]he duty to indemnify . . . is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." *Id.* (internal quotations and citation omitted). "The trial court cannot know what the facts will be or whether those facts will fall within the policy coverage until those facts are established at trial." *Id.* (internal quotations and citation omitted). "In Missouri, the duty to defend is broader than the duty to indemnify." *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 792 (Mo. Ct. App. 2006) (internal quotations and citation omitted).

Kneibert contends that it suffered prejudice because the district court failed to properly instruct the jury. Kneibert believed that it was free to settle the Butler County action in its own best interests without regard to Dr. Smith and Weatherby because of their refusal to defend Kneibert for Dr. Smith's alleged negligence. Kneibert, however, conflates the duty to defend and the duty to indemnify. The two duties are not

coextensive. The former is broader than the latter but nonetheless must arise from a contractual obligation discernible in the parties' agreement.

Kneibert has failed to identify any contractual language between itself and Dr. Smith or Weatherby specifying that either Dr. Smith or Weatherby have a *duty to defend* Kneibert in a lawsuit arising out of Dr. Smith's alleged negligence.[5] *See Crown Ctr.*, 716 S.W.2d at 357. Therefore, Rejected Jury Instruction No. 15 would have been erroneous, as it assumed that Dr. Smith and Weatherby did have a contractual obligation to defend Kneibert.

Furthermore, assuming—without deciding—that Dr. Smith and Weatherby did have a duty to indemnify Kneibert, Missouri courts have recognized and applied a "'general rule of law that any act[s] on the part of any indemnitee which materially increases the risk, or prejudices the rights, of the indemnitor, will discharge the indemnitor under the contract of indemnity.'" *Holiday Inns, Inc. v. Thirteen-Fifty Inv. Co.*, 714 S.W.2d 597, 603 (Mo. Ct. App. 1986) (quoting *Hiern v. St. Paul-Mercury Indemnity Co.*, 262 F.2d 526, 529 (5th Cir. 1959)).

Accordingly, we hold that the district court did not abuse its discretion in instructing the jury, in accordance with *Holiday Inns*, that Kneibert owed a duty not to materially increase the risk to, or prejudice the rights of, Dr. Smith and Weatherby.

B. *Judicial Notice*

Second, Kneibert asserts that the district court erred in refusing to take judicial notice of its prior ruling that Dr. Smith and Weatherby were not bound by the Butler County judgment and in not permitting Kneibert to argue this fact to the jury. According to Kneibert, it could not have increased any risk to Dr. Smith and

___

[5]We also note that Kneibert has not identified any contractual language in the policy between St. Paul and Weatherby that St. Paul would have a duty to defend *Kneibert* against any alleged negligence on Dr. Smith's or Weatherby's part.

Weatherby or prejudiced their rights if they were not bound by the Butler County judgment.

"We review a district court's decision [not] to take judicial notice for abuse of discretion." *Am. Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 796 (8th Cir. 2009). According to Federal Rule of Evidence 201(b), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." "Error in failing to take judicial notice of a fact is not ground for reversal unless it is shown that the appellant is prejudiced by the error." *Blas v. Talabera*, 318 F.2d 617, 619 (9th Cir. 1963).

A "district court is authorized to take judicial notice of prior orders entered in the case . . . ." *United States v. Atalig*, 241 F. App'x 452, 453 (9th Cir. 2007) (unpublished per curiam); *see also In re Papatones*, 143 F.3d 623, 624 n.3 (1st Cir. 1998) ("The court may take judicial notice of its own orders and of records in a case before the court . . . .") (internal quotations and citation omitted).

But a court may properly decline to take judicial notice of documents that are irrelevant to the resolution of a case. *See, e.g.*, *Am. Prairie Constr. Co.*, 560 F.3d at 797 ("Caution must also be taken to avoid admitting evidence, through the use of judicial notice, in contravention of the relevancy, foundation, and hearsay rules."); *United States v. Peck*, 161 F.3d 1171, 1174 (8th Cir. 1998) ("The court also correctly declined to take judicial notice of other irrelevant materials.").

Here, the district court informed the parties during the pretrial conference that, if the first phase of the trial resulted in a favorable verdict for Kneibert, the case would proceed to the second phase of the trial on the merits of the underlying medical malpractice action. On the first day of trial, Kneibert asked the district court to take

judicial notice of its prior determination that Dr. Smith and Weatherby were not bound by the Butler County judgment. Kneibert also requested that the court permit it to present this evidence to the jury—"that there is going to be a trial to determine whether they are bound by the judgment[.]" The district court denied Kneibert's request, stating:

> No, we're not going to get into that about what's going to happen, because I think we might as well have tried those cases together then, okay. That was the reason that I chose to do it this way. And I didn't—believe me, I gave a lot of thought to this.

In its motion for a new trial, Kneibert argued that any increased risk or prejudice to Dr. Smith and Weatherby caused by Kneibert would be affected by their not being bound by the underlying Butler County judgment. Kneibert asserted that any purported risk or prejudice to Dr. Smith and Weatherby effectively evaporated with the district court's pretrial ruling that Kneibert could not offensively use collateral estoppel in the circumstances of the case. In response to that argument, the district court amply explained that it prohibited the introduction of such evidence "[b]ecause of the increased danger of jury confusion and speculation had such evidence been introduced at the first phase of the trial . . . ."

We hold that the district court did not abuse its discretion in declining to take judicial notice. In addition to potential jury confusion, the district court's ruling is supported by two other considerations. First, any decision not to admit evidence of whether Dr. Smith and Weatherby were bound by the judgment was harmless, as the record contains other evidence of prejudice. For instance, the record reflects that Kneibert, through its agents, was contributorily negligent, meaning that Kneibert would be *jointly* liable for the alleged misdiagnosis. For example, Dr. Ozer was extremely critical of Dr. Young, Kneibert's agent, stating that Dr. Young should have performed a biopsy regardless of whether the results of the ultrasound and

mammogram were negative. And, Dr. Parisky originally criticized Dr. Young and Kneibert's radiology technician during his first deposition.

Second, the district court's ruling was in accord with *Holiday Inns*. The question, as set forth in *Holiday Inns*, was whether the indemnitee breached a duty to its indemnitor through its conduct. 714 S.W.2d at 602. The indemnitee has a "duty of acting reasonably under all circumstances so as to protect the indemnitor against liability and of refraining from compromising any of its rights, particularly in settlement negotiations." *Id*. (internal quotations and internal citation omitted). In *Holiday Inns*, the issue of whether Holiday Inns was "bound" by the agreement that the owner of the motel entered into with the injured party was not discussed, as the owner's abrogation of its duty to Holiday Inn resulted in application of the rule that "any acts on the part of any indemnitee which materially increases the risk, or prejudices the rights of the indemnitor, will discharge the indemnitor under the contract of indemnity." *Id*. at 603 (internal quotations, alteration, and citation omitted).[6]

## C. *Striking Venirepersons*

Kneibert argues that, during jury selection, the district court erroneously struck Juror No. 16 and Juror No. 6 for cause. According to Kneibert, Juror No. 16 is a small business owner who stated that he has had disputes with insurance companies, but he did not indicate any dealings with St. Paul, Weatherby's insurer. Kneibert

---

[6]We acknowledge that the court in *Holiday Inns* most likely did not discuss whether Holiday Inns was "bound" by the agreement because the court decided, as a matter of law, that indemnitor's rights were prejudiced.

We also note that the district court never conclusively determined that Dr. Smith and Weatherby *were not* bound by the Butler County judgment, as it specifically stated that "the inquiry in the case remains open as to the circumstances underlying the Judgment entered in the Butler County action and whether, as indemnitors, defendants are bound by that Judgment."

maintains that, upon pointed questioning regarding potential bias, Juror No. 16 candidly stated that he could fairly and impartially weigh the evidence. With regard to Juror No. 6, Kneibert contends that he is a long-time Poplar Bluff, Missouri resident who stated that, simply by virtue of Poplar Bluff being a small town, he "knew of," but was not "friends with," several persons involved in the Butler County action. He also stated that he was treated at Kneibert in the past. Kneibert asserts that Juror No. 6 never suggested that his familiarity with prominent Butler County residents would make him partial to one side or the other, nor was he ever asked; additionally, because he knew parties on all sides of the underlying action, he could not have been biased for or against any party. Therefore, Kneibert maintains that neither Juror No. 16 nor Juror No. 6 demonstrated actual partiality and that the district court erroneously struck them.

In response, Dr. Smith and Weatherby assert that the district court did not abuse its discretion in striking the jurors for cause, as either their answers justified questioning their objectivity or they were too closely connected to the parties in the lawsuit.

During voir dire, Juror No. 16 told the district court that he owns several automobile dealerships and has been in dispute with insurance companies over the years. At the time of trial, he even had some litigation pending against insurance companies. When asked whether anything about the claims would cause him to favor one side or the other, his response was "very much so" and that he would be "anti-insurance company." He further stated that it was his sense and gut feeling that he would go against the insurance company even after hearing the evidence, although he stated that he would "like to think" that he would not act in such a manner. Even when Kneibert's counsel attempted to rehabilitate him, he continued to insist that "I don't think I can help but be skewed somewhat." Noting that the role of insurance companies would be a litigated issue in the trial, and recognizing Juror No. 16's strong statements regarding his self-described "anti-insurance company" bias, the

-17-

district court granted Dr. Smith and Weatherby's request to strike Juror No. 16 for cause.

Also during voir dire, Juror No. 6, a resident of Poplar Bluff, where Kneibert is located, testified that he had received medical treatment at Kneibert and had been a patient at Kneibert for "a long time." He also testified that he was currently a patient at Kneibert, members of his family likewise were current patients at Kneibert, and he considered Kneibert to be his family doctor. Finally, he testified that with his longstanding relationship with Kneibert, he knew Kneibert's designated representative at trial, Robert Christian. Given the ongoing close relationship that Juror No. 6 and his family had with Kneibert and that the matters at trial would directly affect Kneibert, the court granted Dr. Smith and Weatherby's request to strike Juror No. 6 for cause.

"A trial court's decision to disqualify prospective jurors is reviewed for abuse of discretion." *Allen v. Brown Clinic, P.L.L.P.*, 531 F.3d 568, 572 (8th Cir. 2008). "Our standard of review mandates that a trial court's decision to strike a juror for cause be reversed only where a defendant can show actual prejudice." *United States v. Ortiz*, 315 F.3d 873, 888 (8th Cir. 2002). A party challenging a juror for cause "must show actual partiality growing out of the nature and circumstances of the case." *Allen*, 531 F.3d at 572. "A district court is required to strike for cause any juror who is shown to lack impartiality or the appearance of impartiality, and, absent abuse of discretion, we will not interfere with the District Court's determination of juror qualifications." *Id.* (internal quotations, alteration, and citations omitted). A district court possesses "broad discretion in determining whether to strike jurors for cause because it is in the best position to assess the demeanor and credibility of the prospective jurors." *Id.* (internal quotations and citations omitted).

> "Appellants must clear a high hurdle to obtain reversal of a district
> court's decision regarding the dismissal of a juror for cause. The courts

presume that a prospective juror is impartial, and a party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside his or her impressions or opinions and render a verdict based on the evidence presented in court. Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position."

*Id.* (quoting *Moran v. Clarke*, 443 F.3d 646, 650 (8th Cir. 2006)). We have previously recognized that venirepersons' "strong responses . . . in the jury questionnaires in combination with their equivocal responses given during voir dire provide fair support for the district court's decision [to strike the venirepersons]." *United States v. Nelson*, 347 F.3d 701, 712 (8th Cir. 2003).

Here, with regard to Juror No. 16, his "strong responses" regarding his disfavor of insurance companies and his admission that, although he would "like to be fair," his sense and gut feeling was that he would go against the insurance company even after hearing the evidence demonstrate that the district court did not abuse its discretion in striking Juror No. 16. Furthermore, Kneibert has failed to show how it was actually prejudiced by the decision.

With regard to Juror No. 6, the present case is distinguishable from *Allen* where the venireperson had a "long-past professional relationship" with the clinic in question. Here, as was the case with the other venirepersons in *Allen* that the district court properly struck, Juror No. 6 had an ongoing doctor/patient relationship with Kneibert. Therefore, the district court did not abuse its discretion in striking Juror No. 6. And, again, Kneibert has failed to show actual prejudice by the decision.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____