# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3214
_____

United States of America

*Plaintiff - Appellee*

v.

Jonathan Lee Sutton

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: April 10, 2024
Filed: June 26, 2024

_____

Before SMITH, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Jonathan Lee Sutton pleaded guilty to unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court imposed three sex-offender-related special conditions of supervised released based on its belief that Sutton potentially committed incest that produced a child. *See* Iowa Code § 726.2 (defining incest). Sutton appeals these conditions, arguing that they lack a

lawful basis and are unsupported by the evidence. For the reasons stated herein, we vacate the sex-offender-related special conditions and remand.

## I. *Background*

On June 4 and 6, 2022, two shooting incidents occurred in Davenport, Iowa. Witnesses identified Sutton as the shooter. At 11:48 p.m. on June 6, 2022, police officers spotted a Tesla parked in front of a fast-food restaurant. They recognized the vehicle and knew that it was associated with Sutton. Upon noticing a marked police vehicle, a woman exited the restaurant, entered the Tesla, and drove away. Sutton walked away from the restaurant and evaded the officers.

A short time later, officers located the Tesla, abandoned in the parking lot of a nearby gas station. They called a K-9 unit to the scene. The canine alerted near the front passenger door. From outside the Tesla, officers observed ammunition on the floorboard. Officers had the Tesla towed to a local tow lot.

On June 7, 2022, the police department received a phone call. The tow lot reported that a man, whose description matched the appearance of Sutton, came to the tow lot and offered $1,000 cash to access the Tesla. The tow lot declined the man's offer, and he left the premises.

That same day, officers obtained a warrant to search the Tesla. They executed the warrant and recovered a pistol inside the glove box, 13 rounds of ammunition, two spent shell casings, and two receipts showing that the pistol had recently been purchased at an Illinois pawnshop. Officers contacted the pawnbroker, who provided video footage. The video showed that Sutton, accompanied by a woman, selected the pistol. The woman paid for the pistol. She and Sutton later returned and took possession of the firearm.

Based on Sutton's previous felony conviction, the federal government obtained an indictment for unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Sutton cooperated with the investigation and ultimately pleaded

guilty to the crime. The probation office prepared a presentence investigation report (PSR). The PSR calculated an advisory sentencing range of 70 to 87 months' imprisonment and recommended several special conditions of supervised release. These conditions generally related to Sutton's anger management issues.

The government objected to the PSR. It alleged that the PSR omitted a past incestuous relationship between Sutton and a teenaged girl (now an adult) and that this relationship produced a child, who now lives with a relative in a different state. The probation office declined to amend the PSR, responding that "the government's objections appear to be commentary in nature." R. Doc. 30, at 47.

At sentencing, the district court expressed concern that Sutton potentially committed incest that produced a child. The court asked the parties if the child's paternity was known. The parties replied that there was no proof a child existed ("no records of the child's birth or anything like that"), paternity was undetermined, state authorities had previously investigated Sutton for incest, and the investigation was closed when the pregnant teenager moved to another state. R. Doc. 53, at 3–4. The court asked the government "to make contact with whoever has custodial care of the child at this time and find out whether or not they're willing to do a paternity test with the child." *Id.* at 5. It granted a two-month continuance.

Two months later, the parties reappeared. Based on an amended Sentencing Guideline, the court revised Sutton's advisory sentence and calculated a range of 57 to 71 months. The court asked each side to suggest an appropriate sentence. The government asked for 87 months, and Sutton's attorney asked for 48 months. The court imposed a sentence of 71 months' imprisonment.

The court also imposed a three-year term of supervised release. It imposed standard conditions and the special anger-management conditions that the probation office recommended. Then, the court announced its imposition of special sex-offender-related conditions based on its belief that Sutton committed incest against a teenaged girl and thus fathered a child. These conditions include: (1) sex-offender

evaluation and treatment, (2) no contact with any children, and (3) no contact with the teenaged girl (now an adult) or her alleged child. The court provided Sutton with an "escape valve." Appellee's Br. at i. If Sutton could prove to the court that he did not incestuously father a child, the court would remove the sex-offender-related special conditions.

Sutton's attorney objected to these special conditions. The court asserted that they are appropriate. It commented:

> Given that the allegation here is and the investigation was that the defendant fathered a child with [a teenaged relative] and that when [the Iowa Department of Health and Human Services] and when criminal investigators started trying to investigate that, she fled to another state with that child, and that the defendant has declined to take a paternity test for that child, I think there is probable cause to believe he is the father of that child based on the information that's been available on that.
>
> .  .  .
>
> He can have those conditions lifted as soon as it's established he's not the child's father, and he can arrange—make whatever arrangements he would like to make to have paternity testing done. If he doesn't want to do that, then I'm going to assume for the safety of the child and the community that he fathered a child with a minor who he was biologically related to. That makes him extremely dangerous and makes him a sex offender that needs treatment and counseling.

R. Doc. 54, at 17–18.

## II. *Discussion*

On appeal, Sutton challenges the three sex-offender-related special conditions that the district court imposed. He argues that these conditions lack a lawful basis and are unsupported by evidence in the sentencing record. We agree.

"We review for an abuse of discretion the district court's imposition of special conditions of supervised release." *United States v. Hollingshed*, 940 F.3d 410, 419 (8th Cir. 2019). The "district court[] enjoy[s] wide discretion when imposing terms of supervised release. This discretion, however, is not unlimited." *United States v. James*, 792 F.3d 962, 969 (8th Cir. 2015) (internal quotation marks and citation omitted). "When crafting a special condition of supervised release, the district court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements." *United States v. Phillips*, 785 F.3d 282, 284 (8th Cir. 2015) (quoting *United States v. Wiedower*, 634 F.3d 490, 493 (8th Cir. 2011)). A finding is not sufficient unless supported by a preponderance of the evidence. *United States v. Clark*, 932 F.3d 1064, 1066 (8th Cir. 2019).

We conclude that the district court abused its discretion. First, it used a probable cause standard when it found that Sutton committed incest and thereby fathered a child. The proper standard for judicial fact-finding at sentencing is a preponderance of the evidence. *Id.* Probable cause is insufficient. Probable cause, on one hand, means "a reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). Preponderance of the evidence, on the other hand, "means it is more likely than not that an event occurred." *United States v. Soileau*, 686 F.3d 861, 867 (8th Cir. 2012). By applying the lower standard of probable cause to the government's allegations against Sutton, the district court abused its discretion. *See United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) ("[P]robable cause is a lower standard than preponderance of the evidence . . . .").

Second, the district court's factual findings about Sutton's alleged incest and paternity are not supported by the sentencing record. *See United States v. Harrell*, 982 F.3d 1137, 1140 (8th Cir. 2020) ("[S]entencing courts may not engage in speculation or draw inferences unsupported by the record."). The government alleged that Sutton committed incest against a teenager, the teenager became pregnant, and she gave birth to his child. The court gave the government two months

to produce evidence. The sentencing record contains no evidence supporting the allegations.

On appeal, the government avers that, before or during the second sentencing hearing, the district court took "judicial notice" of evidence outside the sentencing record and, based on this evidence, imposed sex-offender-related special conditions. *See* Appellee's Br. at 7–8. Here, judicial notice is not an acceptable alternative to proof of the facts needed to substantiate the truth of the government's allegations. When a court judicially notices a fact, the "fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Cravens v. Smith*, 610 F.3d 1019, 1029 (8th Cir. 2010) (quoting Fed. R. Evid. 201(b)).[1] It is subject to reasonable dispute whether Sutton committed incest and fathered a child. Notoriety is absent, and there is no source for accurately and readily determining Sutton's past sexual activity or its paternal consequences.

If evidence pertinent to the alleged incest or child exists, then it would need to be placed in the sentencing record. If the government or the district court had evidence and did not place it in the sentencing record, then our court could not perform its duty to provide "meaningful appellate review." *Gall v. United States*, 552 U.S. 38, 50 (2007). We assume the record before us is a complete record of the materials that the district court viewed and considered. Examination and use of extra-record materials would have been an abuse of discretion. *See United States v. Lovelace*, 565 F.3d 1080, 1092 (8th Cir. 2009) (finding error when a district court

---

[1]We recognize that the Federal Rules of Evidence do not apply to sentencing matters. *See* Fed. R. Evid. 1101(d)(3). Nonetheless, we believe Rule 201 accurately states the traditional rule for judicially noticing a fact, regardless of the context. *See Brown v. Piper*, 91 U.S. 37, 42 (1875) ("Facts of universal notoriety need not be proved."); *see also Hoyt v. Russell*, 117 U.S. 401, 404 (1886) ("It is undoubtedly true that judicial notice is not taken of purely private concerns, when they are not connected with, or necessarily involved in, a matter of a public nature . . . .").

"rel[ied] on information at sentencing that was not presented in advance to the defendant, in accordance with [Federal] Rule [of Criminal Procedure] 32").

Third, the district court impermissibly shifted the burden of proof from the government to Sutton. Our court has held that "the government bears the burden to justify a condition of supervised release." *United States v. Stelmacher*, 891 F.3d 730, 734 (8th Cir. 2018). The district court inverted this assignment of the burden. It provisionally accepted as true the government's allegations that Sutton committed incest and thus fathered a child, notwithstanding the discontinued state investigation, the probation office's view that these allegations were unsupported, and the government's non-production of evidence after a two-month continuance. We can find no precedent that approves requiring a defendant to disprove the government's unsupported factual allegations in order to avoid the imposition of special supervised-release conditions.[2]

The government's specific allegations are highly disturbing and, if true, horrific. Nonetheless, the district court was obliged to follow the same rules that apply in all sentencings.

### III. *Conclusion*

Because the district court applied a lower standard of proof, found facts that are not supported by the sentencing record and are not judicially noticeable, and impermissibly shifted the government's burden of proof to Sutton, we conclude that

---

[2]We distinguish this case from *United States v. Thompson*, 774 F. App'x 993 (8th Cir. 2019) (unpublished per curiam). In *Thompson*, we reviewed for plain error, not abuse of discretion. *Id.* at 994. There, the district court required the defendant to prove his paternity of an existent child whom the defendant claimed in order to acquire visitation rights, not to disprove his paternity of a potentially non-existent child whom the defendant denies in order to avoid unwanted restrictions. *Id.*

the district court abused its discretion. The sex-offender-related special conditions that Sutton appeals are vacated, and the case is remanded.

_____