# SUPREME COURT OF THE UNITED STATES

LAKHDAR BOUMEDIENE ET AL.

06–1195　　　　　　　　　*v.*

GEORGE W. BUSH, PRESIDENT OF THE UNITED
STATES, ET AL.

KHALED A. F. AL ODAH, NEXT FRIEND OF FAWZI
KHALID ABDULLAH FAHAD AL ODAH, ET AL.

06–1196　　　　　　　　　*v.*

UNITED STATES ET AL.

ON PETITIONS FOR WRITS OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE DISTRICT OF
COLUMBIA CIRCUIT

Nos. 06–1195 and 06–1196.　Decided April 2, 2007

JUSTICE BREYER, with whom JUSTICE SOUTER joins, and
with whom JUSTICE GINSBURG joins as to Part I, dissent-
ing from the denial of certiorari.

I would grant the petitions for certiorari and expedite
argument in these cases.

I

Petitioners, foreign citizens imprisoned at Guantanamo
Bay, Cuba, raise an important question: whether the
Military Commissions Act of 2006, Pub. L. 109–366, 120
Stat. 2600, deprives courts of jurisdiction to consider their
habeas claims, and, if so, whether that deprivation is
constitutional. I believe these questions deserve this
Court's immediate attention.

First, the "province" of the Great Writ, "shaped to guar-
antee the most fundamental of all rights, is to provide an
effective *and speedy* instrument by which judicial inquiry
may be had into the legality of the detention of a person."
*Carafas* v. *LaVallee*, 391 U. S. 234, 238 (1968) (emphasis

added and footnote omitted).  Yet, petitioners have been
held for more than five years.  They have not obtained
judicial review of their habeas claims.  If petitioners are
right about the law, immediate review may avoid an addi-
tional year or more of imprisonment.   If they are wrong,
our review is nevertheless appropriate to help establish
the boundaries of the constitutional provision for the writ
of habeas corpus.  Cf. *Carafas*, *supra*.  Finally, whether
petitioners are right or wrong, our prompt review will
diminish the legal "uncertainty" that now "surrounds" the
application to Guantanamo detainees of this "fundamental
constitutional principle."  Brief for Senator Arlen Specter
as *Amicus Curiae* 19; see generally *ibid.* (favoring expe-
dited consideration of these cases).  Doing so will bring
increased clarity that in turn will speed review in other
cases.

Second, petitioners plausibly argue that the lower
court's reasoning is contrary to this Court's precedent.
This Court previously held that federal jurisdiction lay to
consider petitioners' habeas claims.  *Rasul* v. *Bush*, 542
U. S. 466, 485 (2004) (providing several of these petition-
ers with the right to habeas review under law as it then
stood).  Our analysis proceeded under the then-operative
statute, but petitioners urge that our reasoning applies to
the scope of the constitutional habeas right as well. In
holding that the writ extended to the petitioners in *Rasul*,
we said that Guantanamo was under the complete control
and jurisdiction of the United States.  *Id.*, at 480–481; *id.*,
at 487 (KENNEDY, J., concurring in judgment) ("Guan-
tanamo Bay is in every practical respect a United States
territory").  We then observed that the writ at common law
would have extended to petitioners:

  "Application of the habeas statute to persons detained
  at the base is consistent with the historical reach of
  the writ of habeas corpus.  At common law, courts ex-

ercised habeas jurisdiction over the claims of aliens detained within sovereign territory of the realm, as well as the claims of persons detained in the so-called exempt jurisdictions, where ordinary writs did not run, and all other dominions under the sovereign's control . . . . [E]ven if a territory was no part of the realm, there was no doubt as to the court's power to issue writs of habeas corpus if the territory was under the subjection of the Crown." *Id.*, at 481–482 (internal quotation marks and footnotes omitted).

Our reasoning may be applicable here. The lower court's holding, petitioners urge, disregards these statements and reasoning.

Further, petitioners in *Boumediene* are natives of Algeria, and citizens of Bosnia, seized in Bosnia. Pet. for Cert. in No. 06–1195, p. 4. Other detainees, including several petitioners in *Al Odah*, also are citizens of friendly nations, including Australia, Canada, Kuwait, Turkey, and the United Kingdom; and many were seized outside of any theater of hostility, in places like Pakistan, Thailand, and Zambia. Pet. for Cert. in No. 06–1196, pp. 2–3, and n. 2; 476 F. 3d 981, 1007 (CADC 2007) (Rogers, J., dissenting). It is possible that these circumstances will make a difference in respect to our resolution of the constitutional questions presented. Cf. *Hamdi* v. *Rumsfeld*, 542 U. S. 507, 509, 514, 521 (2004) (plurality opinion of O'Connor, J., joined by Rehnquist, C. J., and KENNEDY and BREYER, JJ.) (holding military had authority to detain United States citizen "enemy combatant," captured in a "*zone of active combat* in a foreign theater of conflict," specifically Afghanistan, and stressing, in a "narrow" holding, that "*[a]ctive combat operations against Taliban fighters . . . [were] ongoing in Afghanistan*" (emphasis added)).

The Government, of course, contests petitioners' arguments on the merits. But I do not here say petitioners are

correct; I say only that the questions presented are significant ones warranting our review.

If petitioners have the right of access to habeas corpus in the federal courts, this Court would then have to consider whether Congress' provision in the Detainee Treatment Act of 2005 (DTA), Tit. X, 119 Stat. 2739, providing for review in the Court of Appeals for the D. C. Circuit of those proceedings, is a constitutionally adequate substitute for habeas corpus. See *Swain* v. *Pressley*, 430 U. S. 372, 381 (1977). The Government argues that we should therefore wait for a case where, unlike petitioners here, the detainee seeking certiorari has actually sought and received review under these alternative means. *E.g.*, Brief in Opposition 16–17. Petitioners respond, however, that further proceedings in the Court of Appeals under the DTA could not possibly remedy a constitutional violation. The lower court expressly indicated that *no constitutional rights* (not merely the right to habeas) extend to the Guantanamo detainees. 476 F. 3d, at 991–992 (rejecting petitioners' arguments under this Court's precedent that fundamental rights afforded by the Constitution extend to Guantanamo, and noting that "[p]recedent in this circuit also forecloses the detainees' claims to constitutional rights"). Therefore, it is irrelevant, to petitioners, that the DTA provides for review in the D. C. Circuit of any constitutional infirmities in the proceedings under that Act, §1005(e)(2)(C)(ii), 119 Stat. 2742; the lower court has already rendered that provision a nullity.

Nor will further percolation of the question presented offer elucidation as to either the threshold question whether petitioners have a right to habeas, or the question whether the DTA provides a constitutionally adequate substitute. It is unreasonable to suggest that the D. C. Circuit in future proceedings under the DTA will provide review that affords petitioners the rights that the Circuit has already concluded they do not have. Ordinarily, ha-

beas petitioners need not exhaust a remedy that is inadequate to vindicate the asserted right. See *Wilwording* v. *Swenson*, 404 U. S. 249, 250 (1971) *(per curiam)*.

The Government, in *Hamdan* v. *Rumsfeld*, 548 U. S. ___ (2006), similarly argued for delay. *Id.*, at ___ (slip op., at 52) ("The Government objects to our consideration of any procedural challenge at this stage on the grounds that . . . [petitioner] will be able to raise any such challenge following a 'final decision' under the DTA"). That case, too, presented questions of the scope of the Guantanamo detainees' right to federal-court review of DTA-authorized procedures. We there rejected the Government's argument for delay as unsound. *Id.*, at ___–___ (slip op., at 52–53) ("[C]ontrary to the Government's assertion, there *is* a 'basis to presume' that the procedures . . . violate the law . . . . Under these circumstances, review . . . in advance of a 'final decision' . . . is appropriate").

Here, as in *Hamdan*, petitioners argue that the tribunals to which they have already been subjected were infirm (by, *inter alia*, denying Petitioners counsel and access to evidence, Pet. for Cert. in No. 06–1195, p. 7). *Hamdan*, *supra*, at ___–___ (slip op., 35–36). Here, as in *Hamdan*, petitioners assert that these procedural infirmities cannot be corrected by review under the DTA which provides for no augmentation of the record on appeal and, as noted above, will provide no remedy for any constitutional violation. See DTA §1005(e)(2)(C), 119 Stat. 2742; 476 F. 3d, at 1005 (Rogers, J., dissenting). Here, as in *Hamdan*, *supra*, at ___ (slip op., at 25), petitioners have a compelling interest in assuring in advance that the procedures to which they are subject are lawful. And here, *unlike Hamdan*, the military tribunals in Guantanamo have completed their work; all that remains are the appeals. For all these reasons, I would grant the petitions.

## II

Moreover, I would expedite our consideration. In the past, this Court has expedited other cases where important issues and a need for speedy consideration were at stake. In *Ex parte Quirin*, 317 U. S. 1 (1942), the Court decided that it should grant expedited consideration,

> "[i]n view of the public importance of the questions raised by [the] petitions and of the duty which rests on the courts, in time of war as well as in time of peace, to preserve unimpaired the constitutional safeguards of civil liberty, and because in our opinion the public interest required that we consider and decide those questions without any avoidable delay." *Id.*, at 19.

See also *Felker* v. *Turpin*, 518 U. S. 651 (1996); *New York Times Co.* v. *United States*, 403 U. S. 713 (1971) *(per curiam); Youngstown Sheet & Tube Co.* v. *Sawyer*, 343 U. S. 579 (1952).

For these reasons, I would grant the petitions for certiorari and the motions to expedite the cases in accordance with the schedule deemed acceptable (in the alternative) by the Government.