# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2910

_____

| | | |
|---|---|---|
| Constitution Party of South Dakota; | * | |
| Joy Howe; Marvin Meyer; | * | |
| Mark Pickens, | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of South Dakota. |
| | * | |
| Chris Nelson, in his official capacity as | * | |
| Secretary of State of South Dakota, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: March 15, 2011
Filed: May 4, 2011

_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

The Constitution Party of South Dakota, Joy Howe, Marvin Meyer, and Mark Pickens brought an action against Chris Nelson, in his official capacity as Secretary of State of South Dakota, claiming violations of the First and Fourteenth Amendments. The plaintiffs' claims relate to the Constitution Party's efforts to place a candidate for governor on the 2010 ballot in South Dakota and challenge the constitutionality of two statutory provisions related to that process. The first provision, S.D. Codified Laws § 12-5-1.4(1), requires candidates of new political

parties in South Dakota who wish to be listed on the gubernatorial ballot to file a petition containing 250 signatures of individuals registered to vote as members of the new party. *See also* S.D. Codified Laws § 12-5-1. The other provision, S.D. Codified Laws § 12-1-3(9), permits only in-state residents to circulate such petitions. The plaintiffs asserted that both provisions infringed upon a number of their constitutionally-protected liberties, including their rights to vote, to equal protection of the laws, to free speech, and to free association, *see* U.S. Const. amends. I, XIV, and that § 12-1-3(9) violated the Commerce Clause as well, *see* U.S. Const. Art. I, § 8, cl. 3.

The plaintiffs sought both declaratory and injunctive relief. To that end, they filed with their complaint a motion for preliminary injunction requesting that the district court compel the state to list a Constitution Party gubernatorial candidate on the 2010 ballot. After the state responded to the plaintiffs' motion, but before the court ruled, the state filed a submission styled "Motion to Dismiss or Motion for Judgment on the Pleadings or in the alternative Motion for Summary Judgment," to which it attached supporting documents; the state filed a memorandum supporting its motion that also supplemented its response to the plaintiffs' request for injunctive relief. The district court then held an expedited hearing on the plaintiffs' request for a preliminary injunction and denied the requested order; the court declined to address the state's motion at that time, stating that it would "defer[] final resolution of the case until after briefing on the motion for summary judgment is complete."

After the plaintiffs filed a legal memorandum opposing the defendant's motion and the state filed a reply, the court filed an "Order Granting Defendant's Motion for Summary Judgment" that entered judgment "for the Defendant under Rules 56 and 58 of the Federal Rules of Civil Procedure" on both counts. The plaintiffs appeal only the judgment entered against them on Count II, which challenged the constitutionality of the residency requirement set out in § 12-1-3(9). The district court held that one of the plaintiffs, Mr. Pickens, had standing to challenge § 12-1-3(9), but the court

relied on *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614 (8th Cir. 2001), to hold that the residency restriction did not violate Mr. Pickens's constitutional rights. Because we conclude that all of the plaintiffs lacked standing to challenge the constitutionality of the relevant statute, we vacate the district court's judgment in part and remand with instructions to dismiss Count II without prejudice for lack of jurisdiction.

I.

The plaintiffs maintain that they all had standing to challenge § 12-1-3(9) and that the court erred in failing to strike it down as unconstitutional. But the state argues that the court should not have reached the merits because none of the plaintiffs had standing to bring the claim. Although the state did not file a cross-appeal on this issue, this failure is inconsequential because standing is a matter of jurisdiction. We may thus consider it *sua sponte*, *see Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1156-57 (8th Cir. 2008), or when raised for the first time on appeal, *see National Wildlife Fed'n v. Agricultural Stabilization & Conservation Serv.*, 955 F.2d 1199, 1202-03 (8th Cir. 1992). "We review the district court's conclusion that the plaintiffs had standing *de novo*." *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006), *cert. denied*, 549 U.S. 1328 (2007).

"Under Article III of the United States Constitution, federal courts may only adjudicate actual cases or controversies." *Pucket*, 526 F.3d at 1157; *see* U.S. Const. Art. III, § 2; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006). And it is Article III standing that enforces this case-or-controversy requirement. *Pucket*, 526 F.3d at 1157. To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff must establish that he or she has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; that there is "a causal connection between the injury and the conduct complained of"; and that it is "likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).

A party invoking federal jurisdiction must support each of the standing requirements with the same kind and degree of evidence at the successive stages of litigation as any other matter on which a plaintiff bears the burden of proof. *Id.* at 561. Therefore "general factual allegations of injury resulting from the defendant's conduct" will suffice to establish Article III standing at the pleading stage, "for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support [a contested] claim." *Id.* (internal quotation marks and citation omitted). On the other hand, because allegations alone are insufficient to survive a summary judgment motion, a plaintiff at this later stage of the litigation process must "set forth by affidavit or other evidence specific facts, which for the purposes of the summary judgment motion will be taken as true." *Id.* (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56 (2009).

The record reveals that the district court granted summary judgment in response to the state's motion. The court repeatedly referred to the motion in those terms – as opposed to calling it a motion to dismiss or a motion for judgment on the pleadings – and it ordered judgment pursuant to Rule 56, which deals only with summary judgment proceedings. The court also explained, and subsequently applied, the appropriate standard for deciding motions for summary judgment under Rule 56 and our precedents, and it did so with respect to both the question of the plaintiffs' standing and the merits of their claims. To survive a standing challenge at this stage of the litigation, then, the plaintiffs must have submitted affidavits or other evidence showing that at least one of them had suffered an injury-in-fact that was caused by the state's enforcement of § 12-1-3(9) and that could be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560-61; *see also National Wildlife Fed'n*, 955 F.2d at 1203 (citing *Bowen v. Kendrick*, 487 U.S. 589, 620 n.15 (1988)).

We conclude that none of the plaintiffs satisfied this burden. When the district court determined that Mr. Pickens had standing to bring a claim, the court asserted that he was a resident of Arizona, that he wished to circulate petitions in South Dakota "presumably for the Constitution Party," and that he was prevented from doing so by the residency requirement in § 12-1-3(9). The court made these findings, however, without any affidavits or other evidence in the record to support them. The court evidently took these facts from the complaint or from the parties subsequent submissions; but neither of these sources is sufficient to withstand a standing challenge on summary judgment, and thus the district court erred when it found that it had jurisdiction to reach the merits of Mr. Pickens's claim in Count II. For similar reasons, we must also reject the resident plaintiffs' contention that the district court should have found that they had standing to bring a claim that § 12-1-3(9) violated their First Amendment right to associate with non-resident petitioners. Even assuming, without deciding, that such a claim might have merit, the resident plaintiffs lacked standing to assert it because they offered no evidence that there was any non-resident who was willing and able to circulate their petitions.

In an effort to salvage Mr. Pickens's standing, the plaintiffs attempt to explain away the district court's error by arguing that, despite all the evidence to the contrary in the text of its opinion, the district court actually decided Count II on the pleadings, as opposed to granting summary judgment on it. The plaintiffs maintain that the court was therefore free to accept the facts alleged in the complaint with respect to that claim as true. In supporting this argument, the plaintiffs direct our attention to the state's statement of material facts that, under the local rules in the District of South Dakota, parties are required to file with motions for summary judgment. *See* D.S.D. Civ. L.R. 56.1. Because nothing in that statement is relevant to Count II, the plaintiffs contend that the state did not submit that claim to the district court on summary judgment and thus the court must have decided it on the pleadings.

What this argument fails to recognize, though, is that the state need not have presented any facts in its statement in order to challenge the plaintiffs' standing with respect to Count II on summary judgment. The state specifically raised the standing issue in a section of its supporting memorandum aptly titled "Motion for Summary Judgment" and reiterated its position on this issue in its reply. The state maintained throughout that the plaintiffs, including Mr. Pickens, did not have standing to challenge § 12-1-3(9), and it pointed out in its reply that the plaintiffs had failed to provide the district court with "any factual assertions in the form of affidavits, declarations, or stipulated facts, as required by *Lujan* ... [which] is essential when considering the matter on a motion for summary judgment." Accordingly, it was the plaintiffs' burden to set forth by affidavit or other evidence specific facts that were sufficient to establish Article III standing. The plaintiffs failed to do this and thus it is wholly irrelevant whether the state also submitted facts in its statement that related to the merits of Count II. In any event, the state did file with its motion an affidavit from Mr. Nelson that, unlike the state's statement of material facts, did contain facts relevant to Count II, and nothing in the local rules prevented the district court from considering those facts. *See* D.S.D. Civ. L.R. 56.1.

The plaintiffs argue further that even if the state did submit Count II to the district court on summary judgment, the court nevertheless chose to decide the claim on the pleadings anyway. The plaintiffs liken our case to *Grillo v. John Alden Ins. Co.*, 939 F. Supp. 685, 686 (D. Minn. 1996). In *Grillo*, a district court disregarded affidavits filed by both parties and refused to convert a motion to dismiss into a motion for summary judgment. *Id.* The court reasoned that the determination of whether to consider such "extra-pleading material," and thus convert an alternative motion into a motion for summary judgment, was a matter "entrusted" to the court's "sound discretion," and opined that the parties were "in no position to present all materials pertinent to a motion for summary judgment." *Id.* In support of this conclusion, the court noted that the parties had conducted no discovery at the time of

its decision, *id.*, and in fact, the defendant had yet even to file an answer to the complaint. *Id.* at n. 1.

The plaintiffs maintain that the instant case is "in an identical posture as the case in *Grillo*" and that the district court "properly ignored [Mr. Nelson's] affidavit in its analysis, which was within its discretion to do." But there is nothing in the record before us to indicate that the district court here took the same action as the court did in *Grillo*. To the contrary, as we have already said, the district court repeatedly and unambiguously stated in its opinion that it was deciding the state's motion for summary judgment. The court applied the appropriate standard of review for summary judgment motions and passed judgment under the applicable federal rule. Nowhere did the court state, or even in the least intimate, that it disregarded any of the evidence that the parties submitted, or that it refused to convert the alternative motion to a motion for summary judgment. We therefore find no merit in the plaintiffs' argument and conclude that Count II must be dismissed for lack of Article III standing. *See Lujan*, 504 U.S. at 561.

## II.

For the forgoing reasons, we vacate the district court's judgment in part and remand with instructions to dismiss the Count II claim without prejudice for lack of jurisdiction.

_____