# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1027

_____

Bonnie Hargis,                          *
                                        *
            Appellant,                  *
                                        *   Appeal from the United States
      v.                                *   District Court for the
                                        *   Eastern District of Missouri.
Access Capital Funding, LLC;            *
Webster Bank, NA,                       *
                                        *
            Appellees.                  *

_____

Submitted: December 13, 2011
Filed: March 5, 2012

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Bonnie Hargis sued Webster Bank and Access Capital Funding (Defendants) in Missouri state court. Hargis, on behalf of a putative class of similarly situated borrowers, alleged that Defendants engaged in the unauthorized practice of law, in violation of Mo. Rev. Stat. § 484.020, when they charged certain fees in the course of refinancing Hargis's mortgage. Defendants removed the suit to federal court under the Class Action Fairness Act (CAFA). 28 U.S.C. § 1332(d). Hargis appeals the

district court's[1] denial of her motion to remand to state court, as well as the grant of summary judgment for Defendants. We affirm in part, vacate in part, and remand.

I.

In 2007, Hargis refinanced her home with a loan from Webster Bank (Webster) that was brokered by Access Capital Funding (Access). At the time, Webster did not have a retail operation in Missouri, so without a broker Hargis would have been unable to obtain a loan from Webster. The principal amount of Hargis's loan was $170,672.00. Hargis's loan from Webster was a 30-year fixed interest loan with a 6.75% interest rate insured by the Federal Housing Administration (FHA). Prior to refinancing, Hargis had two mortgages on her home, with a blended, adjustable, 8.125% interest rate. Due to Hargis's low credit score and high debt to income ratio, it was difficult for her to find a new loan.

Hargis brought $2,500.00 cash to the loan closing. The loan and Hargis's cash, totaling $173,172.00, were placed in an escrow account and used to pay off Hargis's two existing mortgages, her 2007 real estate taxes, some credit card debt, and settlement charges for the loan. The Final Settlement Statement (HUD-1) shows that the funds from the escrow account were disbursed as follows:

| | |
|---|---|
| Primary loan to First Franklin | $131, 278.20 |
| Second mortgage to First Franklin | $ 33, 337.03 |
| Settlement charges to borrower | $ 5,356.19 |
| 2007 real estate taxes | $ 1,126.42 |
| Providian credit card balance | $ 2,074.16 |
| TOTAL: | $173,172.00 |

[1] The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

The settlement charges, in turn, went to pay mortgage and hazard insurance premiums, county real estate taxes, and more credit card debt:

| | |
|---|---|
| Mortgage insurance premium | $2,522.25 |
| Hazard insurance premium | $1,006.00 |
| Jefferson County property taxes | $  251.63 |
| Payment to City Financial | $1,660.00 |
| Subtotal: | $5,439.88 |
| Less adjustment to Webster Bank | $   (83.69) |
| TOTAL: | $5,356.19 |

At closing, Webster paid a $5,333.50 yield spread premium to Access. The yield spread premium is Access's compensation for brokering the loan, in other words for bringing Hargis's business to Webster. Hargis did not pay Access for its services. In this case, Access used part of the yield spread premium to pay for other costs associated with Hargis's loan, including the appraisal fee and fees owed to the title company. The two fees central to this case, a $200.00 processing fee to Access and $450.00 administration fee to Webster, were accounted for in the yield spread premium.

Hargis contends that the processing fee and administration fee are charges for preparing mortgage documents and thus constitute the unauthorized practice of law. In Missouri, non-lawyers may "fill in the blanks in standardized Missouri document forms so long as a Missouri attorney created the legal documents and filling in the blanks on the documents was ancillary to the [non-lawyer's] main business. Hargis v. JLB Corp., — S.W.3d —, No. SC91639, at 7 (Mo. Dec. 20, 2011) (citing Hulse v. Criger, 247 S.W.2d 855, 862 (Mo. banc 1952)). Non-lawyers may not, however, "prepare or complete nonstandard or specialized documents" or "charge a separate fee for document preparation, or vary their customary charges . . . based upon whether

documents are to be prepared in the transaction." JLB Corp., No. SC91639, at 7 (quoting In re First Escrow, 840 S.W.2d 839, 841 (Mo. banc 1992)).

It is undisputed that Access and Webster provided Hargis services that do not constitute the unauthorized practice of law. Access was able to bring Hargis and Webster together for a loan transaction, which allowed Hargis to refinance her home and Webster to gain a customer and profit from the interest charged on Hargis's loan. In the course of doing so, Access performed services, such as obtaining an appraisal of Hargis's home and obtaining a flood certificate, that were required for loan approval. Webster also performed services to secure FHA approval for the loan, including manually underwriting the loan and certifying it. Hargis's complaint does not challenge the compensation for these services; it challenges only the administration and processing fees as fees for the unauthorized practice of law.

Hargis argues that she paid these fees, either directly from the cash she brought to closing or indirectly in the form of a higher interest rate charged to her by Webster. She brought suit in state court on behalf of herself and a class of other borrowers who had been charged such fees. Hargis claimed, in her original complaint, that Defendants engaged in the unauthorized practice of law, violated the Missouri Merchandising and Practices Act (MMPA), Mo. Rev. Stat. § 407.010 *et seq*., and were unjustly enriched.

Defendants removed the action to federal court under CAFA. "Under CAFA, federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate; there is minimal (as opposed to complete) diversity among the parties, i.e., any class member and any defendant are citizens of different states; and there are at least 100 members in the class." Westerfeld v. Indep. Processing, LLC, 621 F.3d 819, 822 (8th Cir. 2010) (citing 28 U.S.C. § 1332(d)). Hargis argued that her class consisted only of Missouri borrowers and that the amount in controversy did not exceed the $5 million threshold for removal. Defendants

countered that Hargis's complaint did not limit her class to Missouri consumers, and thus consideration of consumers nationwide was proper in evaluating the amount in controversy. The district court held that removal under CAFA was proper.

After denying Hargis's motion to remand, the district court asked Hargis to amend her original complaint to clearly define the class Hargis sought to represent.[2] D. Ct. Order of Oct. 4, 2010, at 5. Hargis filed her First Amended Class Action Complaint, and Defendants moved for summary judgment. With her response to Defendants' summary judgment motion, Hargis filed a motion for leave to amend and a proposed Second Amended Class Action Complaint. Hargis's proposed complaint dropped her unjust enrichment and negligence claims and added a claim for "Money Had and Received."

The district court held that Hargis lacked standing because she did not pay, either directly or indirectly, the disputed fees. The district court then granted summary judgment to the Defendants on all counts and denied Hargis's motion for leave to file her Second Amended Complaint.

II.

As a threshold matter, we address whether Hargis's case was properly removed to federal court under CAFA.

We review *de novo* the denial of a motion to remand to state court under CAFA. Westerfeld, 621 F.3d at 822. "[A] party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence regardless of

---

[2]Hargis filed an Amended Class Action Complaint in federal court that added a negligence count to her original state court complaint. [Sept. 3, 2009, ECF No. 27-2]. After the district court requested clarification Hargis filed her First Amended Class Action Complaint. [Oct. 7, 2009, ECF No. 35].

whether the complaint alleges an amount below the jurisdictional minimum." <u>Bell v. Hershey Co.</u>, 557 F.3d 953, 958 (8th Cir. 2009). "Under the preponderance standard, '[t]he jurisdictional fact . . . is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are . . . .'" <u>Id.</u> at 959 (quoting <u>Kopp v Kopp</u>, 280 F.3d 883, 885 (8th Cir. 2002)) (alteration in original). A plaintiff may, however, avoid removal by including "a binding stipulation with his petition stating that he would not seek damages greater than the jurisdictional minimum." <u>Id.</u> at 958 (citing <u>De Aguilar v. Boeing Co.</u>, 47 F.3d 1404, 1412 (5th Cir. 1995)). Such a filing must be made prior to the defendant's removal of the case. <u>Id.</u>

"It is axiomatic that the court's jurisdiction is measured either at the time the action is commenced or, more pertinent to this case, at the time of removal." <u>Schubert v. Auto Owners Ins. Co.</u>, 649 F.3d 817, 822 (8th Cir. 2011) (citing <u>McLain v. Andersen Corp.</u>, 567 F.3d 956, 965 (8th Cir. 2009)). "Further, jurisdiction is determined at the time of removal, even though subsequent events may remove from the case the facts on which jurisdiction was predicated." <u>Quinn v. Ocwen Fed. Bank FSB</u>, 470 F.3d 1240, 1248 (8th Cir. 2006) (per curiam) (citing <u>Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.</u>, 77 F.3d 1063, 1067-68 (8th Cir. 1996)).

The district court correctly denied Hargis's motion to remand to state court. Hargis argues that her putative class consists only of Missouri plaintiffs, because she is alleging a violation of Missouri's statute prohibiting the unlicensed practice of law. When only Missouri plaintiffs are considered, she contends, the amount in controversy does not reach the $5 million threshold required by CAFA. Defendants counter that Hargis's original complaint did not restrict her class to Missouri plaintiffs, and so consideration of a nationwide class was appropriate. When a nationwide class of plaintiffs is contemplated, the amount in controversy exceeds the $5 million mark. CAFA "should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." <u>Westerfeld</u>, 621 F.3d at 822 (quoting S. Rep. No. 109-14, at 43 (2005),

reprinted in 2005 U.S.C.C.A.N. 3, 41).  Hargis's First Amended Complaint redefined her class as consisting of only Missouri plaintiffs, but her original complaint controls this determination, as it was the operative complaint at the time of removal.

"Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." Bell, 557 F.3d at 956 (citing Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 543 (7th Cir. 2006)).  Hargis has not met this burden.  She could have restricted her putative class in her original complaint or stipulated that the class would not seek damages above $5 million, but she did neither.  The district court's denial of Hargis's motion to remand to state court is affirmed.

III.

We review *de novo* a district court's determination of whether a plaintiff has standing.  Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006).  "Under Article III of the United States Constitution, federal courts may only adjudicate actual cases or controversies."  Constitution Party of S.D. v. Nelson, 639 F.3d 417, 420 (8th Cir. 2011) (quoting Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1157 (8th Cir. 2008)).  "A plaintiff has the burden of establishing subject matter jurisdiction, for which standing is a prerequisite."  Jones, 470 F.3d at 1265 (citations omitted).  To satisfy Article III standing, a plaintiff must establish (1) that she has suffered "injury in fact" which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) there must be a causal connection such that the injury is "fairly traceable" to the defendant's conduct; and (3) it must be "likely" and not merely "speculative" that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).

Because the requirements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." Lujan, 504 U.S. at 561) (citations omitted). At the summary judgment stage, the plaintiff cannot rest on allegations, but "must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." Id.

"To survive a standing challenge at [the summary judgment] stage of the litigation, then, the plaintiff[] must have submitted affidavits or other evidence showing that [she] suffered an injury-in-fact . . . ." Constitution Party of South Dakota, 639 F.3d at 421 (citing Lujan, 504 U.S. at 560-61). Hargis's claims depend on her ability to prove that she paid Webster and Access for performing services that constitute the unauthorized practice of law. See Carpenter v. Countrywide Home Loans, Inc., 250 S.W.3d 697, 703 (Mo. banc 2008) (after the two-year filing period for an unauthorized practice of law claim has expired a plaintiff may still bring a "Money Had and Received" claim to recover fees); Bauer Dev. LLC v. BOK Fin. Corp., 290 S.W.3d 96, 100 (Mo. Ct. App. 2009) (to recover for unjust enrichment a plaintiff must have conferred a benefit on defendant); Freeman Health Sys. v. Wass, 124 S.W.3d 504, 507-08 (Mo. Ct. App. 2004) (to bring a claim under the MMPA a plaintiff must suffer an ascertainable financial loss); Bray v. Brooks, 41 S.W.3d 7, 15 (Mo. Ct. App. 2001) (to recover for negligence plaintiff must have been damaged by negligent conduct). If Hargis did not pay Defendants, then she did not suffer an injury, and so would not have standing. Hargis proffers two different theories to satisfy the injury-in-fact requirement.

Hargis first contends that she directly paid Defendants for the administration and processing fees, and thus for unauthorized legal services, because the $2,500.00 cash that she brought to closing was commingled with the money used to pay Defendants' mortgage service fees. But as the Final Settlement Statement shows,

-8-

Hargis's cash and the loan principal from the escrow account can be traced to disbursements other than the mortgage service fees. The money went to pay Hargis's existing mortgages, credit card debts, property taxes and insurance premiums, rather than to Access or Webster. Thus, Hargis suffered no injury because she did not directly pay the processing or administration fee.

Hargis's second theory, that she indirectly paid the fees through a higher interest rate, is more complex. Hargis argues that her interest rate of 6.75% was higher than it would have been had the $450.00 administration fee not been part of the yield spread premium.[3] Therefore, she argues, she is being charged for the unauthorized practice of law through a higher interest rate. Hargis's argument depends on her contention that Webster's "par rate" at the time the loan closed was 6%, and that the remaining 0.75% interest, or some portion of it, paid for legal services.

Hargis's claim does not withstand scrutiny at the summary judgment stage of litigation. It is undisputed that a 6% interest rate was unavailable to individuals borrowing money from Webster. Hargis points to the deposition of Kathleen Lowry, one of Webster's vice presidents, who testified that Webster's "par rate" at the time of Hargis's loan was 6%. But Lowry also testified that the 6% par rate was a base rate, not a starting price for customers, because it does not factor in profitability for the bank. Specifically, Lowry said that the figure was "not a retail price, not what we would give out to any customer that walked in." Because Hargis has introduced no evidence to the contrary, the undisputed evidence shows that a 6% rate was not available to any Webster loan customer, including Hargis.

Hargis has failed to produce any evidence linking her interest rate to the challenged fees or services allegedly constituting the unauthorized practice of law.

---

[3]The $200.00 processing fee was also accounted for in the yield spread premium, but because Access owed the fee to itself it simply waived the fee.

In response to repeated questions that attempted to forge a link between the administration and processing fees and the yield spread premium, Lowry testified, "Yield-spread premium is based on market price" and "doesn't equate to, you know, any other fees associated with the loan." Patrick Agnew, co-owner of Access, testified that Access receives compensation only from lenders, as opposed to individual borrowers. Thus, the evidence shows that Access was paid only by Webster, and that Webster did not set Hargis's interest rate based on fees connected to the loan. Hargis has not produced affidavits or other evidence that support her claim that the processing and administration fees were linked to a higher interest rate. Rather, the evidence shows that there is no link between the fees and interest rate, and thus Hargis is unable to show injury through her indirect payment theory.

Because Hargis did not pay Defendants the fees she complains of, we do not reach the question of whether such fees were for services for which Defendants may charge or for the unauthorized practice of law.

IV.

Hargis further argues that she should be allowed additional time to complete discovery under Rule 56(f)[4] and that the district court erred in failing to take judicial notice of several definitions of "yield spread premium." We disagree. Hargis contends that further discovery and judicial notice of certain legislative materials would have established standing. But neither would change the facts of this case: Hargis did not pay Defendants for unauthorized legal services.

---

[4]Rule 56(f) was the applicable rule at the time Hargis made her motion for further discovery. On December 1, 2010, the Federal Rules of Civil Procedure were amended, and it is now Rule 56(d) that allows a court to grant additional time for discovery to the nonmoving party in a motion for summary judgment. Fed. R. Civ. P. 56(d).

Under Rule 56(f), a party may seek "an extension of time in which to respond to the motion[] [for summary judgment] in order to complete further discovery." Marksmeier v. Davie, 622 F.3d 896, 903 (8th Cir. 2010). "We review a district court's denial of a motion filed under Rule 56(f) for abuse of discretion." Id. (citing Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1054 (8th Cir. 2007)).

Hargis has not met Rule 56(f)'s requirement that she show what "specific facts further discovery might uncover." Anuforo v. C.I.R., 614 F.3d 799, 808 (8th Cir. 2010) (quoting Roark v. City of Hazen, Ark., 189 F.3d 758, 762 (8th Cir. 1999)). Hargis asked for additional time to depose another Webster employee, Rob Kostraba, in order to inquire into "whether Plaintiff's increased payments of interest compensated Webster Bank . . . for the yield spread premium that was paid to Defendants for closing services." Hargis had already deposed the Access employee who handled her loan, the co-owner of Access, and vice president Lowry. Most of Hargis's six-hour deposition of Lowry focused on this very issue. Because Hargis already had the opportunity to question a Webster employee on this subject, the district court did not abuse its discretion in denying Hargis's request for time to complete further discovery before ruling on Defendants' summary judgment motion.

Finally, Hargis argues that the district court abused its discretion in denying Hargis's request that it take judicial notice of legislative materials related to yield spread premiums, specifically, part of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2607(a), its 1999 and 2001 policy statements, and the preamble to a proposed rule corresponding with the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq*. D. Ct. Order of Dec. 23, 2010, at 2. "We review a district court's decision [not] to take judicial notice for abuse of discretion." Cravens v. Smith, 610 F.3d 1019, 1029 (8th Cir. 2010) (alteration in original) (citing Am. Prairie Constr. Co. v. Hoich, 560 F.3d 780, 796 (8th Cir. 2009)).

Hargis argues that the district court was compelled to take notice of these statements under Federal Rule of Evidence 201(d). Rule 201, however, "governs judicial notice of adjudicative fact only, not legislative fact." The legislative policy statements and proposed rules Hargis sought to have noticed are legislative facts. See Qualley v. Clo-Tex Int'l Inc., 212 F.3d 1123, 1128 (8th Cir. 2000) (finding that a district court erred in using Rule 201 to take notice of facts that were not specific to the parties before the court).

The district court concluded that Hargis had no claim under RESPA or TILA and that her claims were not supported by the statute, policy statements, or proposed rule she asked to be noticed. Courts are not required to take judicial notice of irrelevant materials. Cravens, 610 F.3d at 1029 (citing Am. Prairie Constr. Co., 560 F.3d at 797; United States v. Peck, 161 F.3d 1171, 1174 (8th Cir. 1998)). Further, the district court noted that the final version of the proposed rule that Hargis requested be noticed contradicts her arguments. D. Ct. Order of Dec. 23, 2010, at 4 n.5; see Truth in Lending, 74 Fed. Reg. 43232, 43409 (Aug. 26, 2009) ("A yield spread premium disclosed in this manner is not considered to be received by the loan originator directly from the consumer for purposes of § 226.36(d)(2)").

We conclude that the district court did not abuse its discretion in denying Hargis's request for judicial notice. Moreover, we note that "[e]rror in failing to take judicial notice of a fact is not ground for reversal unless it is shown that the appellant is prejudiced by the error." Cravens, 610 F.3d at 1029 (quoting Blas v. Talabera, 318 F.2d 617, 619 (9th Cir. 1963)). Such prejudice is lacking here. Taking notice of the way various legislative materials discuss yield spread premiums does not change the analysis of whether Hargis indirectly paid for legal services through her interest rate.

V.

In sum, Hargis has failed to show that she was charged any fees, directly or indirectly, for legal work performed by non-lawyers. Thus, she has not shown injury and does not have standing to bring her claim. In light of Hargis's lack of standing, the district court should have dismissed for lack of jurisdiction rather than reaching the merits of the summary judgment motion.

The judgment is affirmed in part and vacated in part, and the case is remanded with instructions that the action be dismissed for lack of jurisdiction.

_____