# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1794

_____

St. Louis Heart Center, Inc., Individually and on behalf of all others similarly-situated,

*Plaintiff - Appellant*,

v.

Nomax, Inc.,

*Defendant - Appellee*.

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 11, 2018
Filed: August 6, 2018

_____

Before COLLOTON, BENTON, and ERICKSON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

St. Louis Heart Center, Inc., brought a putative class action against Nomax, Inc., in Missouri state court, alleging that Nomax violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The complaint alleged that Nomax transmitted twelve advertisements to the Heart Center by facsimile without including

a proper opt-out notice on each advertisement. *See id.* § 227(b)(1)(C)(iii); 47 C.F.R. § 64.1200(a)(4)(iii).

Nomax removed the case to federal court, and then moved to dismiss the complaint for lack of Article III standing. The district court ruled that the Heart Center lacked standing and dismissed the action with prejudice. On appeal by the Heart Center, we agree with the district court that the Heart Center lacks Article III standing, but conclude that the proper disposition is remand to the state court under 28 U.S.C. § 1447(c). Accordingly, we vacate the judgment of dismissal and remand with instructions to return the case to state court.

I.

St. Louis Heart Center's third amended complaint alleged that Nomax sent the Heart Center twelve fax advertisements promoting a potassium tablet called "Effer-K." The record shows that each facsimile listed a fax number to which the Heart Center could return a form to request product samples. Six of the facsimiles included a box to be checked "[i]f you wish to no longer receive faxes from Nomax Inc." The other six included a box to be checked next to the inscription: "Please do NOT fax to this office." Each fax also listed the name, telephone number, and e-mail address for a contact person at Nomax. But the complaint alleged that the facsimiles lacked an opt-out notice in the form required by regulations implementing the TCPA. *See* 47 C.F.R. § 64.1200.

On the question of injury, the complaint alleged that Nomax's transmissions caused the Heart Center to lose paper and toner that were consumed when receiving facsimiles, and that the transmissions interfered with the Heart Center's use of its fax machine and telephone line. The Heart Center also alleged that employees wasted their time receiving, reviewing, and routing Nomax's faxes. And the complaint

asserted that Nomax's faxes interrupted the Heart Center's "privacy interests in being left alone."

The parties presented testimony on the question whether consent to receive the facsimiles was relevant to the lawsuit. During discovery, the president of St. Louis Heart Center, Dr. Ronald Weiss, testified that he "never gave permission to have advertising faxes sent to [his] office," and that Nomax sent the challenged faxes without "express permission . . . from the persons it faxed." Weiss also conceded, however, that his definition of the class identified in the complaint would include those individuals who *did* consent to receive the challenged faxes. Plaintiff's counsel stated: "[O]ur class definition is going to be based on an improper opt-out notice *so that the issue of consent or not will not be an issue* in the proceeding onward in the case." Weiss likewise agreed that the class action was "based upon the fact that the facsimiles that were sent did not have the proper opt-out notice," and was "not based upon the fact that consent was not given."

Dr. Weiss also testified that he did not attempt to opt out of receiving future faxes from Nomax because the faxes did not have proper opt-out notices. He stated: "I get a lot of these faxes and my policy is to opt out if there is a proper opt-out notice, but not to call every advertising fax that is sent violating [the] TCPA." He added: "If there would have been an appropriate opt-out notice on the fax I would have tried to opt out, but it was not a proper notice so there was no point in me trying to call."

After considering both the complaint and Dr. Weiss's testimony, the district court dismissed the action for lack of standing. In light of the Heart Center's concession that the lawsuit was not based on a lack of consent, the court doubted the complaint's "bare-bones assertion" that the Heart Center had not given Nomax permission to send the challenged faxes. The court then found that "the opt-out notice" on each Nomax facsimile "conveys to fax recipients the means and

opportunity to opt-out of receiving future faxes, regardless of whether the faxes also meet all of the technical requirements of 47 C.F.R. § 64.1200." The court thus concluded that the Heart Center had "not alleged a concrete or particularized harm resulting from receiving faxes that [the Heart Center] both invited and did not rebuke." Finally, the court decided that 28 U.S.C. § 1447(c) did not require it to remand the action to state court, and therefore dismissed the case with prejudice.

II.

Nomax's motion to dismiss challenged the factual basis for subject matter jurisdiction, and the district court thus properly considered both the complaint and testimony and exhibits that are outside the pleadings. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914-15 (8th Cir. 2015). We review the district court's factual findings for clear error and evaluate the legal conclusions *de novo*. *Id.* at 915; *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

The TCPA makes it unlawful for a person to fax an "unsolicited advertisement" to another unless the unsolicited advertisement has an "opt-out" notice that meets certain requirements. *See* 47 U.S.C. § 227(b)(1)(C)(iii); 47 C.F.R. § 64.1200(a)(4)(iii). The opt-out notice must be "clear and conspicuous and on the first page of the advertisement," 47 C.F.R. § 64.1200(a)(4)(iii)(A); state that the recipient may request that the sender not send future advertisements and that the sender must comply within 30 days, *id.* § 64.1200(a)(4)(iii)(B); set forth the requirements for an opt-out request, *id.* § 64.1200(a)(4)(iii)(C); provide a domestic contact telephone number and a fax number by which the recipient may transmit the opt-out request, *id.* § 64.1200(a)(4)(iii)(D)(1); and set forth a cost-free mechanism by which the recipient can transmit the opt-out request. *Id.* § 64.1200(a)(4)(iii)(D)(2). The telephone number, fax number, and cost-free mechanism identified in the notice also must permit the recipient to make an opt-out request 24 hours a day, 7 days a week. *Id.* § 64.1200(a)(4)(iii)(E).

-4-

Section 227(b)(3) of the TCPA creates a private right of action to enjoin a violation of the above provisions, or "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3). The court may award up to three times this amount, however, if it finds that the defendant committed the violation "willfully or knowingly." *Id.* The Heart Center sought treble damages and injunctive relief on the ground that Nomax's opt-out notice on the twelve challenged faxes did not comply with 47 C.F.R. § 64.1200(a)(4).

That Congress created a private right of action under the TCPA, however, does not necessarily mean that a plaintiff alleging a violation of the statute has Article III standing. Even where "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). To establish Article III standing, the Heart Center must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1547.

We may assume that the Heart Center's allegations about the loss of toner and paper, wasted time, and invasions of privacy are sufficient to allege an injury in fact. *See Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). Even with an alleged injury, however, the Heart Center also must establish that its alleged injury is fairly traceable to an alleged violation of the TCPA. On this prong, the Heart Center's showing is insufficient.

The district court found that the Heart Center "both invited and did not rebuke" the challenged faxes. This finding is not clearly erroneous. Dr. Weiss admitted that

-5-

he requested samples of Nomax's Effer-K product on at least four occasions. While Dr. Weiss first testified that he did not consent to receive Nomax's faxes, he eventually acknowledged that the lawsuit "is not based upon the fact that consent was not given." Counsel similarly represented that "the issue of consent or not will not be an issue" in the case. In other words, the plaintiff conceded for purposes of the lawsuit that the facsimiles were not transmitted without consent.

In that posture, the Heart Center cannot show that its alleged injury is traceable to Nomax's alleged failure to provide a technically compliant opt-out notice. Whether or not the faxes contained a proper opt-out notice, their transmission would have used the Heart Center's paper and toner, occupied its phone lines, and invaded its privacy. Because there is no "causal connection between the injury and the conduct complained of," the Heart Center has not established traceability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Alternatively, the Heart Center urges that Nomax's failure to make certain legally mandated disclosures in its opt-out notice—for example, failing to specify a fax number or domestic telephone number to which a recipient should send opt-out requests—is itself a concrete "intangible injury." A statutory violation can establish injury in fact when it creates "the risk of real harm," but a "bare procedural violation" is insufficient. *Spokeo, Inc.*, 136 S. Ct. at 1549; *see Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016). On this record, the Heart Center has not established that Nomax's alleged failure to display a proper opt-out notice compliant with the federal regulations created a risk of real harm.

The district court found that the opt-out notice that Nomax included did convey to recipients the "means and opportunity to opt-out of receiving future faxes." This finding is not clearly erroneous. Whatever technical deficiencies might have appeared in the opt-out notices, all twelve faxes contained a box that the recipient

could check if he did not wish to receive future faxes, and a domestic fax number to which the form could be returned.  All twelve faxes also contained a phone number and an e-mail address for a Nomax representative.  Yet Dr. Weiss testified that he never attempted to opt-out of receiving future faxes from Nomax, and there is no evidence that Nomax would have ignored such a request.  The Heart Center had the means and opportunity to opt out from receiving future facsimiles, but simply declined to do so.  Any technical violation in the opt-out notices thus did not cause actual harm or create a risk of real harm.  Accordingly, we agree with the district court that the Heart Center lacked Article III standing.

Having concluded that there was no case or controversy, the district court opted to dismiss the action with prejudice.  The Heart Center argues that the court instead should have remanded the case to state court.  Under the removal statute, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

In support of its approach, the district court cited *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783 (8th Cir. 2012), where this court ruled that the plaintiff in a removed case lacked standing and directed the district court to dismiss the case for lack of jurisdiction.  *Id.* at 793.  *Hargis*, however, did not squarely address the effect of the removal statute.  In *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014), this court did directly address the issue and ruled that when there is no Article III case or controversy, and "the case did not originate in federal court but was removed there by the defendants, the federal court *must* remand the case to the state court from whence it came."  *Id.* at 1033.  As we explained in *City of Kansas City v. Yarco Co.*, 625 F.3d 1038 (8th Cir. 2010), a pre-*Hargis* decision, the lack of federal jurisdiction does not obviate the remand requirement of § 1447(c), because state courts are not bound by the limitations of an Article III case or controversy.  *Id.* at 1041; *see ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989).  While the district court

understandably identified *Hargis* as a decision with an analogous procedural posture, *Wallace* and *Yarco Co.* squarely address the remand issue, and they establish the law of the circuit.

*      *      *

For these reasons, although we agree with the district court's conclusion that St. Louis Heart Center lacks Article III standing, we vacate the judgment dismissing the action with prejudice and remand with directions to return the case to state court. St. Louis Heart Center's unopposed motion for judicial notice is granted.

_____